**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4539

RICHARD F. HARRIS,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CR-96-8)

Argued: October 3, 1997

Decided: October 29, 1997

Before WILKINSON, Chief Judge, MICHAEL, Circuit Judge, and
HERLONG, United States District Judge for the
District of South Carolina, sitting by designation.

_____

Affirmed by published opinion. Chief Judge Wilkinson wrote the
opinion, in which Judge Michael and Judge Herlong joined.

_____

**COUNSEL**

**ARGUED:** Pamela Lynn Kandzari, KING, ALLEN & GUTHRIE,
Charleston, West Virginia, for Appellant. Philip Judson Combs,
Assistant United States Attorney, Charleston, West Virginia, for
Appellee. **ON BRIEF:** Rebecca A. Betts, United States Attorney,
Charleston, West Virginia, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

Richard Harris pled guilty to possession of a controlled substance with intent to distribute and received a sentence of 50 months imprisonment. Harris now challenges this sentence on two grounds. First, he argues that the presence of unloaded firearms at his residence does not warrant a two level increase under Section 2D1.1(b)(1) of the Sentencing Guidelines. Second, he maintains that the calculation of his criminal history category under Section 4A1 of the Guidelines should not have included an earlier fine for selling alcohol to a minor. We disagree with both contentions and affirm the sentence.

I.

On December 15, 1995, during a consensual search of Harris' residence for stolen firearms, federal agents discovered evidence of drug-related activity. After obtaining a search warrant, they recovered several bags of cocaine, a bag of marijuana, fifteen capsules of dextro-porpoxyphene (a controlled substance), and a scale with cocaine residue. While the agents did not locate the stolen weapons, they did discover boxes of ammunition and two firearms, one of which was located in the same dresser as some of the cocaine.

Harris pled guilty to one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C.§ 841(a)(1). Under the Guidelines, Harris' base offense level was 22. Because one of the firearms found in Harris' apartment was in close proximity to some of the narcotics, the district court increased the offense level by two. After granting Harris a three level reduction for acceptance of responsibility, the court set his final offense level at 21. Based on Harris' prior sentences, the district court set his criminal history category at III. The court sentenced Harris to 50 months in prison, in the middle of the applicable range; imposed a $50 mandatory assessment; and set a $1,200 fine, well below the fine recommended by the Guidelines. Harris now appeals.

II.

Harris argues that the district court improperly increased his base offense level under Section 2D1.1(b)(1). He contends that the govern-

ment failed to produce any evidence linking the firearms discovered at his residence to the drug-trafficking charge. He further maintains that the enhancement is improper where, as here, the firearms are unloaded. We disagree and hold that the Section 2D1.1(b)(1) enhancement in this case was not clear error. See United States v. Rusher, 966 F.2d 868, 880 (4th Cir. 1992) (reviewing § 2D1.1(b)(1) enhancement for clear error).

The Sentencing Commission recognized that drugs and guns form a lethal combination that can lead to violence. Section 2D1.1(b)(1) reflects this recognition by providing a two level increase in a defendant's base offense level when the defendant "possessed" a dangerous weapon during commission of a narcotics offense. Application Note 3 explains that this "enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons." U.S.S.G. § 2D1.1 Application Note 3 (1995).

The Application Notes to Section 2D1.1 further direct that the "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. We accept the Application Notes as authoritative unless they are inconsistent with the Constitution, a federal statute, or a plain reading of the Guidelines. Stinson v. United States, 508 U.S. 36, 45 (1993); United States v. Hunter, 19 F.3d 895, 896 (4th Cir. 1994).

Our decisions strongly support the proposition that the proximity of narcotics to weapons is sufficient to warrant a Section 2D1.1(b)(1) enhancement. An enhancement under Section 2D1.1(b)(1) does not "require[ ] proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun." United States v. Johnson, 943 F.2d 383, 386 (4th Cir. 1991) (per curiam). Instead, "possession of the weapon during the commission of the offense is all that is needed to invoke the enhancement." United States v. Apple, 962 F.2d 335, 338 (4th Cir. 1992) (Apple II). In Rusher, we held that possession had been established where a gun and drugs were located in the same briefcase. 966 F.2d at 880. Similarly, in United States v. Nelson , we approved an enhancement when the guns and drugs were located in the same home. 6 F.3d 1049, 1056 (4th Cir. 1993). We now unequivocally affirm the rule, already recognized in several other circuits, that the

3

proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under Section 2D1.1(b)(1). E.g., United States v. Corcimiglia, 967 F.2d 724, 727 (1st Cir. 1992); United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992).

We reject Harris' contention that the Supreme Court's opinion in Bailey v. United States, 116 S. Ct. 501 (1995), requires a restrictive construction of the term "possessed." Bailey involved the statutory definition of the term "use," not the Guideline definition of the broader term "possessed." In fact, Bailey recognized that the enhancement for firearms possession under Section 2D1.1(b)(1) covers a greater range of criminal activity than the punishment for "use" of a firearm under 18 U.S.C. § 924(c)(1). See 116 S. Ct. at 509. This circuit has also routinely recognized that the government could seek an enhancement for firearms possession under Section 2D1.1(b)(1) after Section 924(c) convictions have been vacated for failure to satisfy the Bailey criteria for use. See, e.g., United States v. Hillary, 106 F.3d 1170, 1171-72 (4th Cir. 1997). Thus, any reliance on Bailey in the context of a Section 2D1.1(b)(1) enhancement is misplaced. See United States v. Elder, 90 F.3d 1110, 1133 (6th Cir. 1996); United States v. Betz, 82 F.3d 205, 211 n.3 (8th Cir. 1996) (both rejecting arguments that Bailey requires a narrow definition of "possessed" in § 2D1.1(b)(1)).

In this case, the district court's enhancement of Harris' sentence was not error. The location of one of Harris' firearms in the same dresser as some of the narcotics established that Harris "possessed" the weapon. The proximity of the gun to the drugs here is almost identical to the situation in Rusher where a gun and drugs were located in the same briefcase. 966 F.2d at 880. Harris' firearm was even closer to the narcotics than the firearms in Nelson which were merely located in the same home as the drugs. 6 F.3d at 1056. Thus, the district court's finding that Harris "possessed" the weapons must be sustained.[1]

_____

[1] Appellant's reliance on United States v. Apple, 915 F.2d 899 (4th Cir. 1990) (Apple I), is misplaced. In Apple I, this court initially vacated the § 2D1.1(b)(1) enhancements because the district court had not provided adequate findings linking the firearms to the drug conspiracy in that case. Id. at 914. This court approved the enhancements once the district court had made adequate findings. See Apple II, 962 F.2d at 338.

4

Contrary to Harris' suggestion, it is not dispositive that the firearms in this case were unloaded. As the district court properly noted, even an unloaded firearm enhances the risk of violence. Others often do not know whether a weapon is loaded or not. The owner may still employ an unloaded weapon to intimidate others, and even an unloaded firearm may encourage others to resort to weapons in response. Indeed, several circuits have approved the enhancement when a firearm was unloaded. E.g., United States v. Mitchell, 31 F.3d 271, 278 (5th Cir. 1994); United States v. Ewing, 979 F.2d 1234, 1238 (7th Cir. 1992). We find these cases persuasive and agree that the mere fact that a weapon is unloaded cannot prevent a court from enhancing a sentence under Section 2D1.1(b)(1).

We do not, of course, imply that the enhancement should apply merely because police arrest a defendant in his residence and discover an unloaded hunting rifle in a closet. See U.S.S.G. § 2D1.1 Application Note 3. Unlike the example of a hunting rifle, however, Harris has failed to show that a connection between his firearms possession and his narcotics offense was "clearly improbable." See id. His inability to carry that burden persuades us that application of the enhancement was proper.

III.

Harris next argues that the district court should not have included a prior sentence for the sale of alcohol to a minor in calculating his criminal history category. He urges that this prior sentence is excludable under Section 4A1.2(c) because the punishment-- a $340.50 fine -- is similar to West Virginia's punishment for other offenses excludable from the criminal history calculation.

The Guidelines create a general presumption that all prior sentences within the applicable time period will be included in calculating a defendant's criminal history category. The Guidelines define "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere." U.S.S.G. § 4A1.2(a)(1) (emphasis in original). The calculation of criminal history includes sentences for "all felony offenses." U.S.S.G. § 4A1.2(c). The Guidelines further provide that "[s]entences for mis-

demeanor and petty offenses are counted" unless they fall within a narrow exception. Id.

Section 4A1.2(c) does create a limited exception to this general presumption. For a small category of minor offenses-- hitchhiking, juvenile status offenses and truancy, loitering, minor traffic infractions, public intoxication, and vagrancy -- prior sentences "are never counted." U.S.S.G. § 4A1.2(c)(2). For a larger category of offenses, a prior sentence is excluded if it was less than one year probation or thirty days imprisonment and if it was not similar to the instant offense. U.S.S.G. § 4A1.2(c)(1). For both categories, a prior sentence for an offense that is "similar" to a listed offense also may qualify for the exclusion. U.S.S.G. § 4A1.2(c)(1)-(2). [2]

_____

[2] U.S.S.G. § 4A1.2(c) provides:

> (c) Sentences Counted and Excluded
>
> Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:
>
> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
>
> Careless or reckless driving
> Contempt of court
> Disorderly conduct or disturbing the peace
> Driving without a license or with a revoked or suspended license
> False information to a police officer
> Fish and game violations
> Gambling
> Hindering or failure to obey a police officer
> Insufficient funds check
> Leaving the scene of an accident
> Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)
> Non-support
> Prostitution

6

The Guidelines do not define "similar," and this circuit has not interpreted the term. Other circuits have adopted a variety of approaches for determining whether two offenses are"similar." Some circuits define "similar" to mean "similar elements." E.g., United States v. Elmore, 108 F.3d 23, 27 (3d Cir. 1997); United States v. Unger, 915 F.2d 759, 763 (1st Cir. 1990); see also United States v. Martinez, 905 F.2d 251, 255 (9th Cir. 1990) (Wallace, J., concurring). Under this approach, the court compares the elements of a prior offense to the elements of the relevant offense listed in Section 4A1.2(c). Other courts apply a multi-factored test to determine whether two offenses are "similar." E.g. , United States v. Booker, 71 F.3d 685, 689-90 (7th Cir. 1995); United States v. Hardeman, 933 F.2d 278, 281 (5th Cir. 1991); Martinez, 905 F.2d at 253-54. Under this approach, courts examine factors such as "a comparison of punishments imposed for the listed and unlisted offenses, the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." Hardeman, 933 F.2d at 281; see also Booker, 71 F.3d at 689 (considering the Hardeman factors). Courts using the multi-factored approach generally include the elements of the offense as one of the relevant factors. See, e.g., Booker, 71 F.3d at 689; Hardeman, 933 F.2d at 281.

As Hardeman illustrates, the approach of the circuits to the similarity inquiry overlaps. Many circuits appear to recognize that the elements of the offense must play a significant role in determining whether two offenses are "similar" for purposes of Section 4A1.2(c).

_____

Resisting arrest
Trespassing.

(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

Hitchhiking
Juvenile status offenses and truancy
Loitering
Minor traffic infractions (e.g., speeding)
Public intoxication
Vagrancy.

After all, offenses do consist of the essential elements of the crime. An emphasis on the elements comports with the plain meaning of "similar." When two items are "similar," they are "[n]early corresponding; resembling in many respects." Black's Law Dictionary 1240 (5th ed. 1979). Thus, when two offenses are similar, their essential elements are "nearly corresponding" or "resembling in many respects."

By contrast, some of the factors used in the multi-factor tests leave the law indeterminate. For example, the Ninth Circuit considers, among other factors, whether conduct "is universally regarded as culpable." Martinez, 905 F.2d at 254. It undertakes this inquiry by looking to the Model Penal Code and the laws of other jurisdictions. Id. at 253-54. But the Ninth Circuit's approach leaves unanswered how many jurisdictions must regard the conduct as culpable or to what degree. Other factors create similar confusion. Both the Fifth and Ninth Circuits also consider whether the prior offense "indicates a likelihood of recurring criminal conduct." Hardeman, 933 F.2d at 281; see also, Martinez, 905 F.2d at 254. In Hardeman, the Fifth Circuit stated that a prior conviction for failure to maintain financial responsibility (driving an automobile without insurance) did not have "any bearing on whether Hardeman is likely to commit other crimes in the future." 933 F.2d at 283. Yet in Martinez the Ninth Circuit found that a prior sentence for public indecency "is relevant to the likelihood the offender will engage in criminal conduct in the future." 905 F.2d at 254. These cases do not offer any unifying principle for how one offense, but not another, indicates a likelihood of future criminal conduct. This indeterminacy cannot have been what the Sentencing Commission intended.[3]

We must also reject Harris' invitation to define "similar" offenses primarily with reference to factors such as their respective punishments. The Commission already has set out the principal relevance of the punishment. Section 4A1.2(c)(1) creates a threshold requirement that a prior misdemeanor sentence may be excluded only if the term

_____

[3] Indeed, the Ninth Circuit has recognized the unworkability of the Martinez approach in some cases and has created an exception to that approach. See United States v. Kemp, 938 F.2d 1020, 1023 (9th Cir. 1991).

8

of the punishment was less than thirty days imprisonment or one year probation. Thus, the Commission was well aware of the importance of the punishment and easily could have defined excludable prior sentences solely by reference to it. It declined to do so and instead defined excludable prior sentences by reference to the type of offense. To define "similar" as "similar punishments" would rewrite the Guidelines and bypass the framework created by the Commission.

In Harris' case, the district court properly included his prior Florida sentence for selling alcohol to a minor in the calculation of his criminal history category. Section 4A1.2(c) does not list this offense as excludable; nor does this offense share common elements with any of the listed offenses. The elements of Harris' prior offense are that he (1) sell, (2) alcoholic beverages, (3) to a person under 21 years of age. See Fl. Stat. Ann. § 562.11(1)(a) (West 1990). None of the listed offenses in § 4A1.2(c) have elements resembling this combination; none involve selling alcohol; none involve transactions with minors. Absent any similarity between the elements of Harris' prior offense and the elements of the offenses listed in Section 4A1.2(c), we do not need to consider possible similarities in the punishments. Accordingly, consistent with the Guidelines' general presumption to include all prior sentences, Harris' prior sentence for selling alcohol to a minor must be counted in calculating his criminal history category. U.S.S.G. § 4A1.2(c).

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

9