**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 99-4120

RICCO JEREMAINE MCQUEEN,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-98-285)

Submitted: July 6, 1999

Decided: August 10, 1999

Before ERVIN and WILKINS, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Nils E. Gerber, Winston-Salem, North Carolina, for Appellant. Walter
C. Holton, Jr., United States Attorney, Angela H. Miller, Assistant
United States Attorney, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Ricco Jeremaine McQueen appeals his 168-month sentence imposed following his guilty plea pursuant to a plea agreement for conspiracy to distribute cocaine base, in violation of 21 U.S.C.A. §§ 841(b)(1)(A), 846 (West 1994 & Supp. 1999). Finding no error in his sentencing, we affirm.

McQueen was arrested in October 1998 after an extensive investigation tied him to a cocaine distribution ring in High Point, North Carolina, operated by John Reed, and he pleaded guilty to one count of conspiracy to distribute cocaine base in November 1998. According to the presentence report, McQueen admitted purchasing an estimated fourteen ounces of cocaine base from Reed over one and one-half years, that he and Reed made four trips to New York to buy drugs, that he and two co-defendants jointly purchased a shotgun for protection after being robbed by "the Dowdy boys," and that he gave Reed a .45 caliber pistol he previously purchased. When Reed was arrested on October 2, 1998, he told police that the .45 caliber pistol seized from his apartment belonged to McQueen. According to one co-defendant, Reed kept several firearms at McQueen's house, from which the group distributed drugs, and that these firearms were available to all of the co-defendants.

Starting from a base offense level of 38,[1] the probation officer arrived at a total offense level of 37 by adding two levels for the firearms pursuant to U.S.S.G. § 2D1.1(b)(1) and subtracting three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). With a Criminal History Category I, the final result was a sentence range of 210-262 months. The Government moved for a downward departure for "substantial assistance." See U.S.S.G. § 5K1.1.

In his objections to the presentence report, McQueen contended he was entitled to a two-level decrease in offense level under U.S.S.G.

_____

[1] McQueen was held accountable for 3254.58 grams of cocaine base and 261.5 grams of cocaine hydrochloride. See U.S.S.G. § 2D1.1(c)(1) (Nov. 1998).

2

§ 3B1.2(b) for his minor role in the overall conspiracy. He also objected to the two-level firearm enhancement under§ 2D1.1(b)(1). The district court specifically adopted the factual findings and Guidelines applications set forth in the presentence report. More particularly, the court found it was "not clearly improbable" that the .45 caliber pistol given to Reed by McQueen was connected to the criminal drug activity. The court also found that McQueen was not entitled to an adjustment as a minor participant in the conspiracy. On the Government's motion, the court departed downward and imposed a prison sentence of 168 months. On appeal, McQueen raises the same sentencing issues.

With regard to drug offenses, the Guidelines provide that "[i]f a dangerous weapon (including a firearm) was possessed, increase [the offense level] by two levels." U.S.S.G. § 2D1.1(b)(1). The Application Notes explain that the two level increase "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n.3). We review enhancements under § 2D1.1(b)(1) for clear error. See United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997).

Although McQueen accepted the facts set forth in the presentence report, he nevertheless argues that there was no showing of a nexus between the firearms and the drug operation. All that need be shown, however, is "the proximity of guns to illicit narcotics" for the enhancement to apply. Id. As the district court noted during the sentencing hearing, the firearm was provided for protection from further robberies by "the Dowdy boys," and the court understandably surmised that the "protection" had to do with the defendants' drug operation. Other information in the presentence report includes a co-defendant's statement that there were "several firearms" at the house that McQueen and a co-defendant shared, that this house served as the main distribution point for the conspiracy, and that these firearms were "accessible to everyone." McQueen is unable to demonstrate a clear improbability that the firearms were not connected to the drug dealing.**2**

_____

**2** We reject McQueen's contention that, despite a finding that he "possessed" a firearm within the meaning of § 2D1.1(b)(1), he might still be

McQueen contends that he was entitled to an adjustment for playing only a minor role in the offense. We will affirm a district court's finding regarding a defendant's role in the offense unless it is clearly erroneous. See United States v. Withers, 100 F.3d 1142, 1147 (4th Cir. 1996). In determining whether a defendant played a "minor role," the court must "compare the defendant's culpability to that of other participants [and] also `measur[e] each participant's individual acts and relative culpability against the offense of conviction.'" United States v. Reavis, 48 F.3d 763, 769 (4th Cir. 1995) (quoting United States v. Daughtrey, 874 F.2d 213, 216 (4th Cir. 1989)) (second brackets in original). A review of the record belies McQueen's contention that he was little more than a low-level "lackey."

McQueen drove Reed to New York on a number of occasions to pick up shipments of drugs, the last such trip resulting in his arrest in New Jersey when a large cache of cocaine base and cocaine hydrochloride was seized. According to his own post-arrest statement, he purchased a total of fourteen ounces of cocaine base from Reed over an eighteen month period, and he continued to sell drugs even after his arrest in New Jersey in early 1998. Most telling is that McQueen's home served as a primary distribution site for the conspiracy. He was clearly not "substantially less culpable than the average participant" in the conspiracy. U.S.S.G. § 3B1.1, comment. (backg'd.).

Accordingly, we affirm McQueen's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

eligible for a two-level decrease under U.S.S.G. § 2D1.1(b)(6), which incorporates the eligibility criteria of § 5C1.2, the "safety valve" provision. One of these criteria is that he be found to not have "possess[ed] a firearm . . . in connection with the offense " (emphasis added). See United States v. Coleman, 148 F.3d 897, 903-04 (8th Cir.), cert. denied, ___ U.S. ___, 67 U.S.L.W. 3237 (U.S. Oct. 5, 10, 1998) (No. 98-5340) (applying "clearly improbable" standard used to determine nexus between offense and firearm under § 2D1.1(b)(1) to issue of whether firearm was possessed "in connection with the offense" for purposes of safety valve provision).

4