**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 99-4083

ANTHONY ROY DRAKE,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-98-211)

Submitted: July 27, 1999

Decided: September 20, 1999

Before NIEMEYER and HAMILTON, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Louis C. Allen III, Federal Public Defender, Gregory Davis, Assistant
Federal Public Defender, Greensboro, North Carolina, for Appellant.
Walter C. Holton, Jr., United States Attorney, Sandra J. Hairston,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Anthony Roy Drake pled guilty to conspiracy to possess more than 50 grams of crack cocaine with intent to distribute, 21 U.S.C. § 846 (1994), and was sentenced to a term of 210 months imprisonment. Drake challenges his sentence on the grounds that the district court clearly erred in holding him responsible for 829 grams of crack seized from a closet in his home, see U.S. Sentencing Guidelines Manual § 2D1.1 (1998), and in making a two-level enhancement to account for firearms found in the same room. See USSG § 2D1.1(b)(1). We affirm.

Drake testified at sentencing that a co-conspirator, Rodney Williams, had placed the crack in his closet without his knowledge or permission. He admitted buying seven grams of crack from Williams and distributing this amount to a government informant, but insisted that his agreement with Williams was limited to the seven grams. He asserted that Williams told him later that he put the crack in Drake's closet intending to ask if he could hide the crack in the woods behind Drake's home. Drake's sister testified that Williams had arrived at his mobile home shortly before the search warrant was executed and had gone directly into the master bedroom, where he stayed for a few minutes, although neither Drake nor his wife were at home. Drake, his wife, and his sister testified that, after the search and their arrest, Williams took the blame and apologized to them all in the police van.

However, the government informant had observed three ounces of crack in Drake's bedroom when he bought a small amount of crack from Drake a few days earlier. He reported that the sale took place in a room without working lights; the officers who executed the search confirmed that the lights in the master bedroom did not work. Moreover, Drake acknowledged that he and Williams sold marijuana together in the past and that he had pending firearms charges in New

2

Jersey. The district court found that Drake had conducted at least one drug transaction in the back bedroom, not outside as Drake asserted, that Williams' conduct in storing 829 grams of crack in Drake's bedroom was within the scope of Drake's agreement with him, and that it was reasonably foreseeable to Drake that Williams would supply him with additional crack at his residence for distribution purposes. The court further found that, because there was evidence that Drake conducted at least one drug transaction in the bedroom where the firearms were found, it was not clearly improbable that the firearms were connected to the drug trafficking. Accordingly, the court added two offense levels under USSG § 2D1.1(b)(1).

Under USSG § 1B1.3, a defendant who is convicted of conspiracy is accountable for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." A defendant is not responsible for drug quantities that were outside "the scope of the criminal activity that he jointly undertook." USSG § 1B1.3, comment. (n.2). In determining the scope of the defendant's agreement, "the court may consider . . . any implicit agreement fairly inferred from the conduct of the defendant and others." Id.

Drake principally argues that the government failed to prove that he knew the crack was in his home, that he consented to have the crack placed there, or that such a large amount was within the scope of his agreement with Williams or was reasonably foreseeable to him. While the government had no direct evidence establishing the scope of Drake's agreement with Williams, we find that the district court did not clearly err in finding that circumstantial evidence permitted the inference that Drake's agreement was not limited to the seven grams of crack he distributed to the informant and that, even if it was Williams who placed the crack in Drake's closet, his action was reasonably foreseeable to Drake.

Drake further argues that the district court should not have considered the government's hearsay evidence concerning the informant's dealings with him because a matter so important should not be decided on hearsay evidence. It is well established that any information, including hearsay evidence, is acceptable at a sentencing hearing, as long as it has "sufficient indicia of reliability to support its probable accuracy." USSG § 6A1.3, p.s., comment. (citing United

3

States v. Watts, 117 S. Ct. 633, 637 (1997)). Drake suggests that the informant could not have observed three ounces of crack in Drake's bedroom because the room was dark. However, the sale could not have been carried out in total darkness. If some light entered the room from the doorway, the informant could have observed the three ounces of crack when Drake retrieved the small amount of crack he sold to the informant from its storage place. Therefore, the district court did not clearly err in finding that Drake was accountable for the 829 grams of crack found in his closet.

Because the district court found that the crack was at least reasonably foreseeable to Drake, and Drake failed to show that it was clearly improbable that the firearms were connected to the drug offense, the enhancement for the presence of weapons was not clearly erroneous. Application Note 3 to § 2D1.1 explains that the enhancement should be made if a dangerous weapon is present, unless it is clearly improbable that the weapon is connected to the offense. It is sufficient that a firearm be located in a place where the drug conspiracy is carried out. See United States v. Harris, 128 F.3d 850, 853 (4th Cir. 1997).

We therefore affirm the conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4