# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

CEDRIC LEVAR ALEXANDER,
　　　　　*Defendant-Appellant.*

No. 02-4771

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
James H. Michael, Jr., Senior District Judge.
(CR-01-35)

Submitted: March 25, 2003

Decided: April 23, 2003

Before NIEMEYER, WILLIAMS, and GREGORY, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

William F. Quillian, III, Lynchburg, Virginia, for Appellant. John L. Brownlee, United States Attorney, Bruce A. Pagel, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Cedric Levar Alexander was convicted by a jury of conspiracy to possess with intent to distribute 50 grams or more of crack cocaine, 21 U.S.C. § 846 (2000) (Count One), and aiding and abetting the possession of 50 grams or more of crack cocaine with intent to distribute, 21 U.S.C. § 841 (2000), 18 U.S.C. § 2 (2000) (Count Two). He appeals the 324-month sentence he received, contending that the district court erred on factual and legal grounds in determining his sentence by finding that he was responsible for 672 grams of crack and that he possessed a firearm in connection with the offense. *U.S. Sentencing Guidelines Manual* § 2D1.1 (2001). Alexander also maintains that § 841 and § 846 are unconstitutional in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Finding no merit in these contentions, we affirm.

Alexander was a passenger in a car stopped for speeding on Route 29 in Virginia on September 24, 2000. The car belonged to Alexander's wife, but was being driven by Antonio Christian. Because neither Christian nor Alexander had a valid driver's license, the officer arranged for the car to be towed and offered to give the men a ride to the nearest gas station. While the officer was completing his paperwork, Alexander got out of the car in an unusual fashion, grabbing the top of the vehicle and backing out so that he did not turn his back on the officer. He then walked to the front of the patrol car and remained there even after the officer told him twice to get back in the car.

Because of this behavior, the officer asked Alexander for permission to pat him down before putting him in the patrol car. Alexander agreed. As the officer conducted the pat-down from behind Alexander, he felt a "large bulge" in the small of Alexander's back which seemed to be the hammer of a revolver. At the same time, the officer heard the sound of plastic and felt a hard rock-like substance in the same area. The officer told Alexander to put his hands on the patrol car. Instead, Alexander turned around and tried to grab the officer's hands. When the officer drew his revolver, Alexander ran into the woods. The officer pursued him briefly while calling for back-up, but then abandoned the chase and returned to the cars.

Christian was gone. The jacket he had been wearing was still in the car and in the pocket was a plastic bag containing 248.2 grams (nearly nine ounces) of crack. The officer noticed that a cereal box in the back seat that had previously been closed had been moved and opened. When another officer arrived with a drug detection dog, the dog alerted on three of the car's door handles, the driver's seat, the rear seat, the cereal box on the floor in the back seat, and the area between the front seats. In the glove box of the car, the officers found papers relating to the suspension of Alexander's driver's license.

Christian was apprehended a short distance from the vehicle. Authorities learned from him that he and Alexander had each purchased nine ounces of crack in Washington before they were stopped and that Alexander had concealed his crack in the cereal box. Christian said he had made two such trips with Alexander before and that Alexander bought three ounces of crack on each prior trip.

Alexander meanwhile made his way to a house where Dustin Catella agreed to drive him to Charlottesville for $600. Trista Smith and Mike Falciglia went along for the ride. In Charlottesville, Alexander borrowed Catella's cell phone and made several calls. Catella then drove Alexander to Lynchburg where Alexander was picked up by two people. During the drive, Alexander told Catella he was "running from the police" because he "had dope on him" and that he had left the drugs in the woods.

Following Alexander's conviction, the district court credited the information provided by Christian concerning Alexander's drug trafficking activities to determine the amount of crack for which he was responsible. The court's factual finding is reviewed for clear error. *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999). Alexander contends on appeal that he should be accountable for no more than the nine ounces of crack that were seized because Christian must have fabricated the additional drug quantities in an attempt to receive favorable treatment from the prosecutor and the court.* However, Alexander did not offer anything more than speculation to discredit Christian at the sentencing hearing. While it is true that the govern-

---

*Despite his initial cooperation, Christian also went to trial, and did not receive a departure for substantial assistance.

ment presented no evidence to corroborate Christian's allegation that Alexander bought a total of six ounces of crack on two previous trips to Washington, Christian's statement concerning Alexander's purchase of nine ounces of crack on September 24 was corroborated by the officer's experience and observations at the scene of the traffic stop and by Alexander's statements to Catella. These facts lent credibility to Christian's statement that Alexander had also made prior crack purchases. On this record, we are not able to conclude that the district court clearly erred in finding Christian's information reliable or credible. *See Randall*, 171 F.3d at 211 (defendant has burden of showing that disputed information in presentence report is unreliable or inaccurate). Therefore, the court did not clearly err in attributing 672 grams of crack to Alexander.

Nor did this determination violate the rule set out in *Apprendi*. The jury's finding that Alexander conspired to possess with intent to distribute "50 grams or more" of crack established a maximum statutory sentence of life imprisonment under § 841(b)(1)(A). Judicial factfinding under the sentencing guidelines to determine the sentence within the statutory range does not implicate *Apprendi*. *United States v. Kinter*, 235 F.3d 192, 201 (4th Cir. 2000). The relevant "maximum" under *Apprendi* is found in the statute, not the guidelines. *Id.*

Next, Alexander challenges the two-level enhancement under USSG § 2D1.1(b)(1) for possession of a dangerous weapon during the offense. The enhancement must be made if a "weapon was present, unless it is clearly improbable that the weapon was connected with the offense." As with other factual questions, the district court's determination that a weapon enhancement was warranted is reviewed for clear error. *United States v. Harris*, 128 F.3d 850, 853 (4th Cir. 1997) ("proximity of guns to illicit narcotics" is enough to support enhancement).

Alexander argues that the evidence was insufficient to establish that he possessed a firearm because the deputy did not see a gun and none was recovered. He also contends that the guideline requires, or at least implies, that a gun must be found or its existence confirmed conclusively before the enhancement may be made because a connection between the gun and the drugs cannot otherwise be established. However, the officer's testimony that he felt what he believed to be

the hammer of a revolver under Alexander's shirt was sufficient evidence that Alexander possessed a gun. Moreover, the presence of the gun in the car with the nine ounces of crack that were seized warranted the enhancement. As discussed above, this guideline sentence enhancement did not violate *Apprendi*.

Last, citing *Apprendi*, 530 U.S. at 490, Alexander argues that § 841 (and by extension § 846) is unconstitutional on its face because it removes "from the jury, the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed." As previously discussed, the district court's determination of factors relevant to the guideline sentence does not affect the statutory range determined under § 841. In addition, this Court has held that § 841 does not conflict with the rule set out in *Apprendi* because it does not prescribe how the elements of the crime or other relevant facts should be determined, and thus is not unconstitutional on its face. *United States v. McAllister*, 272 F.3d 228, 232 (4th Cir. 2001). Alexander's claim consequently fails.

We therefore affirm the sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*