**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 04-4024

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

LANCE L. BROWN,

Defendant - Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, District Judge.  (CR-03-153)

---

Argued:  October 29, 2004          Decided:  January 11, 2005

---

Before NIEMEYER and LUTTIG, Circuit Judges, and HAMILTON, Senior Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Amy Leigh Austin, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Daniel James Bryant, UNITED STATES DEPARTMENT OF JUSTICE, Criminal Division, Washington, D.C., for Appellee.  **ON BRIEF:** Frank W. Dunham, Jr., Federal Public Defender, Alexandria, Virginia, for Appellant.  Paul J. McNulty, United States Attorney, Michael J. Elston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia; Charles E. James, Jr., Assistant United States Attorney,  OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

On the evening of March 28, 2003, Richmond (Virginia) Police Officer Jack Intagliato arrested the defendant Lance Brown on an outstanding warrant as Brown was pulling away from a curb driving an automobile. During the ensuing search of the passenger compartment and center console of Brown's automobile, Officer Intagliato recovered $516 in currency, packaging materials consistent with that used in the distribution of drugs, and a loaded rifle magazine. And from the automobile's trunk, he recovered a semiautomatic rifle and a jacket with 28 grams of crack cocaine in its pocket.

Brown was indicted and convicted for possession with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. § 841; simple possession of five or more grams of cocaine base, in violation of 21 U.S.C. § 844; and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). The district court sentenced Brown to 110 months' imprisonment for the drug trafficking count (of which the simple possession was a lesser included offense) and 60 months' imprisonment on the firearm count, to run consecutively.

On appeal, Brown contends (1) that Officer Intagliato mishandled the jacket containing the crack cocaine -- denying him an opportunity to prove that it was not his -- and that therefore

the district court erred in denying Brown's motion to dismiss the indictment; (2) that the evidence presented at trial was insufficient for a jury to conclude beyond a reasonable doubt that Brown knowingly and intentionally possessed crack cocaine; and (3) that the district court improperly enhanced Brown's sentence based on a prior conviction for underage possession of alcohol.

For the reasons that follow, we affirm.

I

First, Brown contends that Officer Intagliato violated his due process rights under Arizona v. Youngblood, 488 U.S. 51 (1988), when Officer Intagliato failed to preserve potentially exculpatory evidence. Brown claims that the jacket with the crack cocaine in it, which Officer Intagliato found in the trunk of Brown's automobile, was not his jacket and that Officer Intagliato denied him the opportunity to prove that fact by having him twice try on the jacket to see whether it fit. Brown argues that by trying on the jacket, he probably contaminated the jacket by leaving evidence of his DNA on the jacket, which otherwise would not have been there. The circumstances relating to this claim are not in dispute.

After Officer Intagliato found the rifle ammunition in the center console of Brown's automobile, he asked Brown whether he had a firearm. Brown stated that he had a firearm in the trunk of the car. When Officer Intagliato opened the trunk, he found a

jacket draped over a box that contained a semiautomatic rifle. In the jacket pocket, Officer Intagliato found 28 grams of crack cocaine. Officer Intagliato seized this evidence and transported Brown to the police station. Once at the station, Brown acknowledged that the rifle was his, but he claimed that the jacket and crack cocaine were not. Officer Intagliato expressed disbelief as to Brown's claim because he recalled having seen Brown in the jacket, or in one similar to it, on a previous occasion. When Officer Intagliato invited Brown to try on the jacket to see whether it fit, Brown agreed to do so. After Officer Intagliato concluded that the jacket fit Brown, he again asked Brown to put on the jacket so that he could take a picture with Brown wearing the jacket, and again Brown agreed to do so. Officer Intagliato then processed the jacket as evidence in the case.

Brown contends that by twice trying on the jacket, he was denied the opportunity to test the jacket for his DNA to prove that the jacket was not his. He asserts that Officer Intagliato improperly handled the jacket in violation of Richmond Police Department General Order 202-2, which provides that evidence should be properly packaged to prevent contamination or destruction by improper handling, and that this violation denied him due process under <u>Arizona v. Youngblood</u>, 488 U.S. 51, 57-58 (1988). In <u>Youngblood</u>, the Supreme Court held that the failure to preserve potentially useful evidence may constitute a denial of due process

-5-

of law if it can be shown that the police acted in "bad faith." Id.

The record in this case does not support a claim that Officer Intagliato acted in bad faith in having Brown try on the jacket. During the discussions between Officer Intagliato and Brown, Brown claimed that the jacket was not his and that it did not even fit him. In response, Officer Intagliato asked, "Do you want to try it on?" and Brown willingly did so. This exchange simply evidences Officer Intagliato's effort to collect evidence and build a case, which it was his job as a police officer to do. Mere collection of evidence, even when perhaps not in accord with local police evidentiary procedures, cannot ipso facto rise to the level of a due process violation absent some showing of bad faith.

Moreover, there is no evidence to demonstrate that Officer Intagliato was aware of the possibility that he might be destroying evidence by having Brown try on the jacket. See Youngblood, 488 U.S. at 56 n.* (noting that bad faith turns on the "police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed"); Holdren v. Legursky, 16 F.3d 57, 60 (4th Cir. 1994) (same). Indeed, at the motions hearing, Officer Intagliato testified that he was not aware of any potential DNA procedure that could be used to exonerate or implicate Brown. Moreover, it would appear to be self-evident that the absence of an

individual's DNA on a garment would not necessarily prove that the individual never wore the garment.

In the absence of any evidence of bad faith, the district court properly denied Brown's motion to dismiss the indictment.

II

Brown also contends that the evidence presented at trial was insufficient for a jury to conclude beyond a reasonable doubt that Brown knowingly and intentionally possessed crack cocaine.

Of course, such a challenge must overcome a heavy burden. See, e.g., Burks v. United States, 437 U.S. 1, 17 (1978) (reversal for insufficient evidence is reserved for the rarest of cases "where the prosecution's failure is clear"). "When reviewing the evidence that resulted in a conviction, we take the evidence in the light most favorable to the government to determine whether the jury's verdict was supported by substantial evidence." United States v. Strickland, 245 F.3d 368, 385 (4th Cir. 2001).

In order to prove that a defendant possessed crack cocaine, the government must prove that the defendant either had custody of the crack cocaine or had both the power and intention to exercise dominion and control over it. See United States v. Jackson, 124 F.3d 607, 610 (4th Cir. 1997). In this case, we conclude that the government carried that burden. The government presented evidence (1) that Brown was arrested while driving an automobile; (2) that in the passenger compartment of the automobile

-7-

was $516 in cash and packaging materials consistent with drug distribution; (3) that Brown admitted to ownership of a firearm that was in a box in the automobile's trunk; (4) that draped over the firearm was a jacket containing crack cocaine; (5) that Officer Intagliato recalled having seen Brown at an earlier time wearing that jacket or one similar to it; and (6) that the jacket apparently fit Brown. Brown contended that the jacket was not his but belonged to a friend, Javone Broaddus, and that Broaddus had placed the jacket in the trunk. Even though Brown presented some evidence to show that the jacket and the cocaine in it were not his, this evidence alone does not compel us to conclude that the jury's conclusion to the contrary was clear error. Deferring to the jury, as we must when its verdict is supported by substantial evidence, we affirm the verdict.

III

Finally, Brown claims that the district court erred in assessing one criminal history point under U.S.S.G. § 4A1.2(c) for his prior conviction for underage possession of alcohol. He contends that this prior conviction is not to be counted in determining criminal history because it falls within the list of excluded offenses, which also includes offenses "similar to" the enumerated excluded offenses. See U.S.S.G. § 4A1.2(c)(1). In particular, Brown argues that his underage possession of alcohol

-8-

conviction is "similar to" a conviction for public intoxication or for driving without a license.

As a general proposition, U.S.S.G. § 4A1.1 provides for the enhancement of a sentence when a defendant has a prior criminal history.  Section 4A.1.2(c), which describes the prior offenses that apply, states that "sentences for all felony offenses are counted."  U.S.S.G. § 4A1.2(c).  Likewise, it states that "sentences for misdemeanor and petty offenses are counted," except as expressly listed.  Id.  Included in the list of excepted offenses are convictions for public intoxication, driving without a license, and "offenses similar to them, by whatever name they are known."  U.S.S.G. § 4A1.2(c)(1) (emphasis added).

In United States v. Harris, 128 F.3d 850 (4th Cir. 1997), we held that when determining whether offenses are "similar" for purposes of § 4A1.2(c), recourse must be made to the elements of the crimes.  "After all, offenses do consist of the essential elements of the crime.  An emphasis on the elements comports with the plain meaning of 'similar.'  When two items are 'similar,' they are '[n]early corresponding; resembling in many respects.'"  Id. at 854 (citation omitted).  Applying this standard to the question of whether underage possession of alcohol is "similar to" public intoxication or driving without a license, we conclude that it is not.

The elements of underage possession of alcohol are the possession or purchase of alcohol by a person under 21 years of age, unless the person does so by reason of making a delivery of alcoholic beverages in pursuance of his employment or by order of his parent. Va. Code Ann. §§ 4.1-304, 4.1-305. We can find no similarity between the elements of this offense and public intoxication except that alcohol is involved in both. Their similarity certainly cannot be established under the strictures of Harris.

Brown argues more vigorously that the offense of underage possession of alcohol is "similar to" driving without a license. He argues, citing United States v. Webb, 218 F.3d 877, 881 (8th Cir. 2000), that underage possession is a regulatory offense that is "similar to" driving without a license. In doing so, however, Brown urges us to adopt a standard of similarity that is at odds with the standard established by Harris. When we compare the elements of an underage possession of alcohol violation and driving without a license violation, we again find that the essential elements of each offense are not "[n]early corresponding; resembling in many respects." See Harris, 128 F.3d at 854 (citation omitted).

We thus conclude that the trial court did not err in assessing Brown one criminal history point for his past conviction for underage possession of alcohol.

AFFIRMED