UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 05-5029

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CUAUHTEMO DOMINGUEZ-YANES,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. James A. Beaty, Jr., District Judge. (CR-05-65)

Argued: October 27, 2006          Decided: January 8, 2007

Before WILKINS, Chief Judge, and WIDENER and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** William Lindsay Osteen, Jr., ADAMS & OSTEEN, Greensboro, North Carolina, for Appellant. Sandra Jane Hairston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Cuauhtemo Dominguez-Yanes appeals the 114-month sentence he received after his guilty plea to possession of 487 grams of methamphetamine with intent to distribute, 21 U.S.C.A. § 841(a), (b)(1)(B) (West 1999 & Supp. 2006). He contends that the district court clearly erred in giving him a two-level enhancement under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2004) for possession of a dangerous weapon. We affirm.

I.

In January 2005, during an investigation into methamphetamine sales in western North Carolina, Jose Olivas, a/k/a "Guero," identified Cuauhtemo Dominguez-Yanes as his source for about 1200 grams of methamphetamine he had purchased during the previous two months. Olivas said that their transactions usually took place at a mobile home, or trailer, at 4989 Colon Road in Sanford, North Carolina, and that there was usually another man with Dominguez-Yanes during the sales. Olivas placed a monitored call to Dominguez-Yanes and ordered "the usual." The defendant agreed to meet the drug purchaser "at the trailer." (J.A. 14) A short time later, surveillance officers saw Dominguez-Yanes and Jose Aguirre-Arizaga arrive at the trailer and walk around to the back with a white bucket. Dominguez-Yanes set the bucket down and they waited until Olivas arrived. They then walked back to the

front of the trailer, where they were arrested. The bucket contained 449.7 grams of methamphetamine.

The officers conducted a security search of the trailer, and found a loaded .50 caliber[1] handgun in the kitchen and a UPS shipping box addressed to Aguirre-Arizaga in the living room. Near the front steps was a plastic bag containing bills addressed to Aguirre-Arizaga at that address, as well as discarded drug wrappers. Further investigation revealed that the electricity had been turned off, but the service had been in Aguirre-Arizaga's name. Both Dominguez-Yanes and Aguirre-Arizaga pleaded guilty to possession of 487 grams of methamphetamine with intent to distribute on January 20, 2005, the date of their arrest.

Over Dominguez-Yanes's objection, the district court decided that it was not clearly improbable that the gun was connected to the drug offense, because Dominguez-Yanes and Aguirre-Arizaga used the trailer as a location for drug sales, Aguirre-Arizaga controlled the trailer, and the gun was, therefore, accessible to Dominguez-Yanes. The court determined that the drug sales were a jointly undertaken activity between Dominguez-Yanes and Aguirre-Arizaga, based in part on the fact that Aguirre-Arizaga accompanied Dominguez-Yanes to the drug sale on the day they were arrested. The court adopted the guideline calculation in the presentence report, which recommended an advisory guideline range

_____

[1]This may also appear in the record as .40 cal.

- 3 -

of 108-135 months.  The court imposed a sentence of 114 months imprisonment.

On appeal, Dominguez-Yanes contends that the government failed to show that he or his co-defendant, Aguirre-Arizaga, possessed the gun.  He points out that there was no evidence that any of the prior drug sales took place inside the trailer, that the electricity to the trailer had been turned off on January 20, 2005, or that he or Aguirre-Arizaga was in possession of the trailer on that date.  He maintains that the presence of mail addressed to Aguirre-Arizaga inside the trailer was insufficient to establish possession of the firearm, either actual or constructive, by either of them.

## II.

A district court's decision to impose an enhancement for possession of a dangerous weapon will be upheld unless clearly erroneous.  United States v. Apple, 915 F.2d 899, 914 (4th Cir. 1990)("The determination whether a firearm was present in the sense that it justified enhancement is a factual determination subject to clearly erroneous review.")[2]

---

[2]The defendant acknowledged at the sentencing hearing that the gun was found in the trailer which was leased or rented by Yanes' co-defendant.  This was the same trailer at which location the set-up drug sale took place.

A two-level enhancement should be applied if a dangerous "weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1), comment. (n.3). "[T]he proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence" under this guideline. United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997). Moreover, "[u]nder relevant conduct principles, the enhancement applies when the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction." United States v. McAllister, 272 F.3d 228, 233-34 (4th Cir. 2001) (citation and internal quotation omitted). A defendant is also accountable under relevant conduct principles for conduct of others involved with him in a jointly undertaken criminal activity as long as those acts are reasonably foreseeable to him. USSG § 1B1.3(a)(1)(B).

The evidence established that Dominguez-Yanes had conducted previous drug sales at the trailer, and that Aguirre-Arizaga, who accompanied him, had at some point been responsible for electrical service there and had received mail there. The government contends that this evidence supports the court's finding that the presence of the gun inside the trailer was at least reasonably foreseeable to Dominguez-Yanes, and that it was not clearly improbable that the gun was connected to the drug offense.

United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994) ("[A]bsent evidence of exceptional circumstances, it is fairly inferable that a co-defendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash.") (internal quotations omitted).

We note that there was no evidence presented to show that Aguirre-Arizaga was not still in possession of the trailer. Thus, even though the electricity had been turned off, he might still have been renting it. Moreover, Dominguez-Yanes told the probation officer that he and Aguirre-Arizaga were living at the trailer at the time of their arrest. Although his statement, contained in the presentence report, apparently did not influence the district court's decision, Dominguez-Yanes did not object to the inclusion of this statement in the presentence report or seek to correct it. On balance, we conclude that the district court did not clearly err in finding that the enhancement was warranted.

The judgment of the district court is accordingly

AFFIRMED.