PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

v.

KEVIN MYELL SLADE,

       *Defendant-Appellant.*

No. 08-4932

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Louise W. Flanagan, Chief District Judge.
(4:08-cr-00003-FL-1)

Argued: October 29, 2010

Decided: January 27, 2011

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Motz and Judge Shedd joined.

---

## COUNSEL

**ARGUED**: Richard Clarke Speaks, SPEAKS LAW FIRM, PC, Wilmington, North Carolina, for Appellant. Joshua Bryan Royster, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George

E. B. Holding, United States Attorney, Anne M. Hayes, Jennifer P. May-Parker, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

## OPINION

GREGORY, Circuit Judge:

This case deals with the propriety of imposing a leadership sentencing enhancement where the defendant was a mid-level drug dealer who did not supervise others. In June of 2008, Kevin Myell Slade pled guilty without a plea agreement to one count of conspiracy to distribute and to possess with intent to distribute fifty grams or more of cocaine base and five kilograms or more of cocaine in violation 21 U.S.C. § 846 (2006). At sentencing, the district court adopted the findings of the presentence report ("PSR"), including imposition of the so-called leadership enhancement. The court then sentenced Slade to 365 months imprisonment, the upper end of the guideline's range. Because the district court improperly imposed the leadership enhancement and this mistake constitutes plain error, we vacate and remand for resentencing.

I.

The New Bern Police Department in tandem with the North Carolina State Bureau of Investigations targeted several narcotics distributors in Craven County, North Carolina, including Slade. Investigators determined that Slade was a mid-level drug trafficker, who supplied large quantities of cocaine, crack cocaine, and marijuana to six indicted and unindicted coconspirators. These individuals subsequently distributed the controlled substances. Several co-conspirators, including Slade's "right hand man," sold cocaine and crack cocaine on his behalf. Slade was also transported to various drug deals by his cousin.

During the investigation, the New Bern Police Department conducted multiple controlled buys from Slade as well as seizures. Investigators obtained statements from numerous individuals who provided information regarding the defendant's drug trafficking activities. Among these individuals was Herman King, who informed the police that Slade always carried guns. The government also presented testimony on behalf of Sergeant Wilcutt who testified about Slade's criminal history involving guns.

On July 2, 2008, Slade pled guilty to count one of the indictment: conspiracy. At sentencing, the district court adopted the PSR, which held Slade accountable for drugs totaling a base offense level of thirty four, with a two-level upward enhancement for possession of a firearm, a three-level enhancement for Slade's leadership role in the offense, and a three-level reduction for acceptance of responsibility. It then calculated the range of imprisonment at 292 to 365 months. After hearing from counsel and taking the allocution from Slade, the court sentenced him to 365 months. Slade timely appealed.

## II.

### A.

Slade first argues that the district court erred in calculating the base drug amount attributable to him under § 2D1.1(a)(3) of the Sentencing Guidelines. More specifically, he contends that the district court considered unreliable and unsubstantiated evidence in the PSR to find him responsible for the equivalent of 20,515 kilograms of marijuana. Slade's argument is meritless.

"We review the district court's calculation of the quantity of drugs attributable to a defendant for sentencing purposes for clear error." *United States v. Randall*, 171 F.3d 195, 210 (4th Cir. 1999) (*citing United States v. McDonald*, 61 F.3d

248, 255 (4th Cir. 1995)). Under § 1B1.3(a)(1)(B) the defendant is responsible not only for his own acts, but also for "all reasonably foreseeable acts" of his co-conspirators in furtherance of the joint criminal activity. *Id.*; *United States v. Lipford*, 203 F.3d 259, 271-72 (4th Cir. 2000). The defendant bears the burden of establishing that the information relied upon by the district court—here the PSR—is erroneous. *Randall*, 171 F.3d at 210-11 (*citing United States v. Love*, 134 F.3d 595, 606 (4th Cir. 1998)). Because Slade failed to object to the drug-quantity calculation before the district court, we review for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993).

Slade argues that because he was incarcerated when the drug deals occurred—namely during several months in 2006—it was physically impossible for him to have facilitated them. The government responds that Slade was sentenced in August, and therefore had eight months to complete the alleged transactions. Yet the PSR indicates that Slade was arrested subsequent to his first arrest in January 2006, indicating that he was not incarcerated but instead out on bail. This reading is also supported by the fact that his probation was revoked in July of 2007, suggesting that his sentence was probation, not incarceration. Furthermore, it is within the discretion of the district court to credit the testimony of these witnesses who discussed his involvement in the drug trade. *United States v. Falesbork*, 5 F.3d 715, 722 (4th Cir. 1993) (district court has broad discretion at sentencing to weigh credibility). It was not plain error for the district court to believe witnesses over Slade's word by, for example, believing that the transactions occurred during the periods of 2006 when Slade was not incarcerated. Finally, if the transactions were facilitated for Slade on behalf of his co-conspirators, he is liable as if he had sold them himself.

B.

Slade next argues that the district court improperly applied the two-level enhancement for possession of a firearm. Under

§ 2D1.1(b)(1), a district court must increase the defendant's offense level two levels "[i]f a dangerous weapon (including a firearm) was possessed." U.S. Sentencing Guidelines Manual, § 2D1.1(b)(1) (2004). In order to prove that a weapon was present, the Government "need show only that the weapon was possessed during the relevant illegal drug activity." *United States v. McAllister*, 272 F.3d 228, 233-34 (4th Cir. 2001) (*citing United States v. Harris*, 128 F.3d 850, 852 (4th Cir.1997). "We review findings of fact relating to sentencing enhancements for clear error." *Id.* Under this standard of review, this Court will only reverse if left with the "definite and firm conviction that a mistake has been committed." *United States v. Harvey*, 532 F.3d 326, 336-37 (4th Cir. 2008) (internal quotations omitted).

The enhancement "reflects the increased danger of violence when drug traffickers possess weapons" and should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1(b)(1), cmt. n.3. The enhancement is proper when "the weapon was possessed in connection with drug activity that was part of the same course of conduct or common scheme as the offense of conviction," *United States v. Manigan*, 592 F.3d 621, 628-29 (4th Cir. 2010) (internal quotation marks omitted), even in the absence of "proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun," *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997) (internal quotation marks and citations omitted). It is the defendant's burden to show that a connection between his possession of a firearm and his narcotic offense is "clearly improbable." *See id.* at 853 (internal quotation marks omitted).

Here, the PSR recommended application of the two-level enhancement under USSG § 2D1.1(b)(1) based on the statement of Herman King, a co-conspirator who purchased or received cocaine from Slade in 2005, that Slade "always car-

ried guns" in connection with his drug-trafficking activities. In objecting to this recommendation in the district court, Slade asserted that King's statement that he "always" carried guns during the course of his drug activities was not credible because it was uncorroborated and because he had been arrested for and convicted of several drug offenses where a gun was not involved. The Government countered that, as shown by Slade's criminal record, he was charged with and convicted of other gun offenses during the course of the subject drug conspiracy. The Government also presented testimony from a state detective familiar with the investigation of Slade that King's statements to investigators concerning Slade were reliable and not untruthful. The detective confirmed that, during the subject conspiracy, Slade shot known drug dealers and gave a handgun to an individual who later pled guilty in federal court to a drug trafficking offense.

The district court credited the detective's testimony and, relying on it, Slade's criminal history, and the evidence in the PSR, overruled Slade's objection and adopted the PSR's recommendation to apply the two-level enhancement under USSG § 2D1.1(b)(1). The district court did not commit clear error in applying the enhancement. Slade was a member of the subject drug conspiracy from "at least 2003 to January 2007," and a reliable co-conspirator who interacted with Slade in the course of that conspiracy related his knowledge that Slade "always carried guns" in connection with his drug-trafficking activities. Slade has not shown that it was "clearly improbable" that the firearms were connected with the drug conspiracy, and he is entitled to no relief on this claim.

## C.

Finally, Slade's offense level was increased three levels because the district court determined that he played an aggravating role as a manager or supervisor of the drug conspiracy. Section 3B1.1(b) of the Guidelines provides for a three-level enhancement in a defendant's offense level "[i]f the defendant

was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." USSG § 3B1.1(b). Application of the enhancement is warranted if the defendant was a manager or supervisor "of one or more other participants." *Id.*, cmt. n.2; *see United States v. Bartley*, 230 F.3d 667, 673 (4th Cir. 2000).

Because Slade failed to object to the determination in the district court, this Court reviews for plain error. *See United States v. Rooks*, 596 F.3d 204, 212 (4th Cir. 2010), *cert. denied*, 131 S.Ct. 148 (Oct 4, 2010). To prevail under this standard, Slade must show that an error was made, is plain, and affected his substantial rights. *Id.* In the sentencing context, an error affects substantial rights if, "absent the error, a different sentence might have been imposed." *United States v. Hernandez*, 603 F.3d 267, 273 (4th Cir. 2010).

Slade argues that the district court's determination that he was a manager or supervisor of the drug conspiracy was erroneous because the record evidence is insufficient to show that he actually "managed" or "supervised" persons involved in the conspiracy. (Appellant's Br. at 16).[1] We agree. Although the Guidelines do not define the term manager, this Court utilizes the dictionary definition: "'a person whose work or profession is the management of a specified thing (as a business, an institution, or a particular phase or activity within a business or institution).'" *United States v. Chambers*, 985 F.2d 1263, 1268 (4th Cir. 1993) (quoting Webster's Third New International Dictionary 1372 (1986) (emphasis omitted)). The enhancement is appropriate where the evidence demon-

---

[1]Slade also argues that there is no evidence that he managed or supervised property (Appellant's Br. at 16), but this assertion is irrelevant, as a defendant does not qualify for an aggravating role enhancement under USSG § 3B1.1 in the absence of evidence that he organized or managed participants, as opposed to property, in the criminal enterprise, *United States v. Cameron*, 573 F.3d 179, 185 (4th Cir. 2009).

strates that the defendant "controlled the activities of other participants" or "exercised management responsibility." *Bartley*, 230 F.3d at 673-74 (internal quotation marks omitted).

According to the PSR, which the district court adopted, Slade was a "mid[-] to upper-level" member of the drug conspiracy who sold or delivered cocaine and cocaine base both to his own clientele and to other members of the conspiracy, who, in turn, sold the drugs to their clientele. Certain co-conspirators also sold cocaine and cocaine base "for" Slade on various occasions. The PSR reveals further that an unindicted co-conspirator drove Slade to various locations to deliver cocaine base to his clients. These are the only factual findings supporting the role enhancement assessed against Slade,[2] and they do not justify imposition of an enhancement for a management or supervisory role.

It is clear that Slade sold illegal drugs, "[b]ut being a buyer [or] seller of illegal drugs, even in league with . . . five or more other persons, does not establish that a defendant has functioned as a[ ] . . . manager or supervisor of criminal activity." *United States v. Sayles*, 296 F.3d 219, 225 (4th Cir. 2002) (internal quotation marks omitted). In cases where this Court has affirmed the application of an aggravating role adjustment under USSG § 3B1.1(b), there existed on the record evidence that the defendant actively exercised some authority over other participants in the operation or actively managed its activities. *See United States v. Llamas*, 599 F.3d 381, 389-90 (4th Cir. 2010) (affirming USSG § 3B1.1(b) enhancement where the defendant "exercised supervisory responsibility over" the activities of a call center by, *inter alia*, enforcing the center's rules, punishing non-compliant operators, and coordinating the operators' activities); *Kellam*, 568 F.3d at 147-48 (affirming USSG § 3B1.1(b) enhancement

---

[2]The Government does not contend to the contrary. (See Appellee's Br. at 18-19).

where the defendant controlled the drug buys of co-conspirators and directed the terms of payment); *Bartley*, 230 F.3d at 673-74 (affirming USSG § 3B1.1(b) enhancement where the defendant directed the activities of street-level drug dealers and advised them on drug sales techniques, set prices and payment terms, arranged logistics of delivery, and directed the mailing and transport of drugs); *United States v. Al-Talib*, 55 F.3d 923, 932 (4th Cir. 1995) (affirming USSG § 3B1.1(b) enhancement where the defendant "acted as a manager in a large criminal enterprise, supervising the preparation of marijuana for shipment and sending out his inferiors to deliver the drugs"); *United States v. Brooks*, 957 F.2d 1138, 1152 (4th Cir. 1992) (affirming USSG § 3B1.1(b) enhancement where the defendant, *inter alia*, paid employees of the drug operation and "effectively ran the operation while her husband was ill").

Such evidence is lacking in this case. Although Slade supplied large quantities of drugs to some co-conspirators who, in turn, sold those drugs to their clientele, there is simply no evidence that Slade exercised any supervisory responsibility over these persons by controlling them or directing the terms of their sales. Additionally, while an unindicted co-conspirator did drive Slade to various locations to deliver cocaine base to his own clientele, there is no indication from the record that the co-conspirator did so pursuant to or as a result of any exercise of managerial or supervisory authority by Slade. Finally, while various co-conspirators sold drugs "for" Slade, there is simply no evidence in the record that Slade had any involvement in those sales beyond that of supplying the drug. In short, this record does not support the conclusion that Slade was exercising authority over other co-conspirators or managing the conspiracy's activities. In light of the absence of any evidence of Slade's aggravating role as a manager or supervisor, the district court erred in enhancing his offense level under USSG § 3B1.1(b).[3]

---

[3]The Government's argument does not alter our conclusion. It claims that the section 3B1.1(b) enhancement was properly applied because the

The district court's error was also plain. *See Olano*, 507 U.S. at 734 (explaining that "plain" error is "synonymous with clear or . . . obvious" error (internal quotation marks omitted)). Finally, the court's error affected Slade's substantial rights. Under the plain error standard, Slade has the burden of showing that the court's error "had a prejudicial effect on the sentence imposed." *United States v. Lynn*, 592 F.3d 572, 580 (4th Cir. 2010). Here, had the district court correctly calculated Slade's Guidelines range, it might have given Slade a lower imprisonment term.[4] Considering that the district court sentenced Slade at the highest end of what it thought to be the Guidelines range, there exists a nonspeculative basis to infer prejudice that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (discussing the fourth prong of the plain error test) (internal quotation marks and alteration omitted).

In sum, although the district court did not err in its calculation of Slade's base offense level or in enhancing that level for possession of a firearm, the court erred in assessing an

---

record "contains statements that [Slade]'s driver drove him around to deliver [cocaine base] to his client and that his 'right hand man' sold [cocaine base] and cocaine for him." (Appellee.s Br. at 18). It is certainly true that Slade's cousin, Felicia Beckworth, drove Slade to various locations to deliver cocaine base to his clients, but there is no indication from the PSR that she did so pursuant to any direction or exercise of supervisory authority by Slade. Moreover, while Beckworth did in fact drive Slade, the claim that she was "his" driver finds no record support. The PSR also reveals that LoMichael Grice, an unindicted co-conspirator described as Slade's "right hand man," sold cocaine and cocaine base "for" Slade. But, again, there is no evidence that Slade in any way controlled or directed Grice's drug sales, and the appellation "right hand man" does not reveal anything about whether Grice was acting pursuant to or as the result of any exercise by Slade of supervisory authority.

[4]Without the three-level enhancement under USSG § 3B1.1(b), Slade's total offense level would have been 33. A total offense level of 33 and a Category V criminal history produce an advisory Guidelines range of 210 to 262 months' imprisonment, *see* USSG ch. 5, pt. A (sentencing table).

enhancement under USSG § 3B1.1(b) for Slade's role in the offense. The 365-month sentence is therefore procedurally unreasonable. *United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008). We therefore vacate and remand it to the district court for resentencing.

### III.

For the foregoing reasons, the sentence of the district court is vacated and remanded for resentencing consistent with this opinion.

*VACATED AND REMANDED*