**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 10-4550**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONNELL COPPEDGE,

Defendant - Appellant.

---

**No. 10-4764**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DONALD JUNIOR COPPEDGE, a/k/a Droopy, a/k/a Droop,

Defendant - Appellant.

---

Appeals from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (4:09-cr-00054-F-1; 4:09-cr-00054-F-2)

---

Submitted: July 23, 2012          Decided: July 30, 2012

---

Before GREGORY, WYNN, and THACKER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Robert L. Cooper, COOPER, DAVIS & COOPER, Fayetteville, North Carolina, for Appellant Donald Junior Coppedge; Michael W. Patrick, LAW OFFICE OF MICHAEL W. PATRICK, Chapel Hill, North Carolina, for Appellant Donnell Coppedge.  Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Kristine L. Fritz, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

I.

Donald Junior Coppedge was arrested by the state police on June 3, 2009, on drug-related charges. A grand jury later returned a five-count superseding indictment against both Donald and Donnell Coppedge, alleging various drug-related offenses. While in custody, Donald made several unsolicited statements to law enforcement officials. Soon after he began to speak, he was advised of his Miranda rights, orally agreed to waive them, and continued to speak. The following day, he continued to make statements to law enforcement; he was again advised of his Miranda rights and waived them in writing. On July 21, 2009, while Donald was being transported from state to federal custody, he began speaking again to Detective Rose Edmonds of the Greenville Drug Task Force and FBI Agent Joseph Lewis. He was advised of his Miranda rights a third time and signed another written waiver. After signing the form, Donald told the detectives that he wanted to speak to his attorney, Derek Brown, who had represented him in relation to the state charges. Detective Edmonds had Brown's phone number programmed in his cell phone and allowed Donald to call Brown. After speaking with Brown, Donald said he wanted to talk to Detective Edmonds. During that conversation, Donald made several incriminating

3

statements about his past involvement in the purchase and distribution of crack cocaine and powder cocaine.

Prior to trial, Donald moved to suppress the statements he made to law enforcement officers on July 21, claiming that these statements were involuntary under the Fifth Amendment and taken in violation of his right to counsel under the Sixth Amendment. The district court held a hearing and denied the motion.

Also prior to trial, the Government filed notices of intent to seek enhanced penalties against both Appellants[1] under 18 U.S.C. § 841. The notice listed two prior felony drug convictions for Donald: a 2005 conviction for the sale of a controlled substance and a 1998 conviction for possession with intent to sell and deliver a controlled substance. This notice increased Donald's maximum term of imprisonment on each count from 20 to 30 years.

The jury found Donald guilty of counts two and five, distribution of a quantity of cocaine base and possession with intent to distribute a quantity of cocaine. It found Donnell guilty of count four, possession with intent to distribute 50 grams or more of cocaine base and aiding and abetting.

---

[1] While the Government filed notices against both Appellants, only Donald challenges the enhancement to this Court.

4

Donald's presentence report ("PSR") found that he was accountable for more than 6.9 kilograms of cocaine base and 2.7 kilograms of cocaine. Three offense levels were added for his role as a manager or supervisor. Two levels were also added because the district court found that he attempted to obstruct justice with false testimony he gave at the suppression hearing. The PSR further noted that Donald had two previous drug convictions, making him a career offender. With a total offense level of 43 and a criminal history category of VI, Donald's guidelines range was 360 months' imprisonment. He was sentenced to two concurrent 240-month sentences.

At his own sentencing hearing, Donnell challenged several factual findings in the presentence report. The court held a hearing and permitted the parties to call witnesses; after a law enforcement officer testified, the court indicated the difficulty it would have in determining the drug weight attributable to Donnell. J.A. 1153 ("[This is] an absolutely impossible task."). It was also considering whether to impose a firearm and leadership role enhancement. Defense counsel requested a moment to speak with his client, and after conferring with Donnell said, "[Donnell] would be willing to stipulate as to the applicability of the firearm and the leadership role if the Government was willing to agree as to the relevant conduct being that which the jury found, the 73.5

5

grams." J.A. 1156. The Government agreed to the stipulation. The court conducted a brief colloquy with the Appellant to ensure he understood what the stipulation meant. The sentencing guidelines range was then recalculated based on the agreed-upon facts, yielding a range of 168 to 210 months' imprisonment. The court again confirmed that Donnell withdrew all of his pro se motions and objections and then granted the request that the PSR be modified to reflect the revised calculations. Donnell was then sentenced to 198 months. Both Appellants timely appealed.

## II.

Donald and Donnell Coppedge make five arguments on appeal, contending that the district court (1) erred in denying Donald's motion to suppress the statements he made on July 21, 2009; (2) improperly applied the career offender enhancement and the § 841 statutory maximum sentence in calculating Donald's sentencing guidelines range; (3) attributed an incorrect drug weight to Donald; (4) erroneously failed to apply the Fair Sentencing Act to Donald's sentence; and (5) improperly applied the managerial enhancement to Donald.

We hold that the district court did not err in denying Donald's motion to suppress nor in its sentencing of either Appellant. We therefore affirm the convictions and sentences.

A.

The Appellants first argue that the district court erred in denying Donald's motion to suppress the inculpatory statements he made to law enforcement officials on July 21, 2009. In reviewing a motion to suppress, this Court reviews "factual findings for clear error and legal conclusions de novo." United States v. Blake, 571 F.3d 331, 338 (4th Cir. 2009). When the district court denies the motion, the evidence is reviewed "in the light most favorable to the Government." United States v. Green, 599 F.3d 360, 375 (4th Cir. 2010).

The Fifth Amendment protects the right against self incrimination. In Miranda v. Arizona, the Supreme Court held that because custodial interrogations work "inherently compelling pressures" on the person being interrogated, the police must inform him that he has the right to remain silent and to the presence of an attorney. 384 U.S. 436, 467, 444 (1966). However, the defendant may waive these rights so long as he does so "knowingly and voluntarily." North Carolina v. Butler, 441 U.S. 369, 373 (1979). "Knowing" requires the waiver to be made with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 312, 421 (1986). The voluntariness prong requires that the waiver be "the product of a free and deliberate choice rather than intimidation, coercion,

7

or deception." Id. The determination of whether a waiver is valid is based on the "totality of the circumstances surrounding the interrogation." Id.

The Appellant first disputes the district court's determination that he was ever informed of his Miranda rights. See Br. of Appellant at 38, 39. The district court, however, found that Donald was read his rights by the officers prior to each of his statements. J.A. 169, 170, 171. These factual findings are based on the district court's hearing and assessing the credibility of the witnesses -- both Donald, who testified in his own defense, and the investigating officers. J.A. 168. Because Donald makes no argument as to why the district court's factual findings should be rejected but simply asserts that he was never read his Miranda rights, we reject this argument.

Donald next argues that the waiver of his Miranda rights was not knowing and voluntary. Several facts noted by the district court belie this contention. On each of the three occasions that he spoke to the police, Donald was read his rights and waived them orally or in writing. On the last occasion, when he gave the most inculpatory statements, he spoke only after he called his attorney from a detective's cellular phone. The district court further considered Coppedge's personal characteristics, including his "familiarity with the criminal justice system, the setting of the various

8

'interviews,' [and] the fact that each was initiated by Coppedge himself or at his request . . . ." J.A. 173. Finally, the court noted the fact that Donald repeatedly told law enforcement that he wished to cooperate with them. Given these facts, we hold that the district court did not err in finding that Donald's waiver was knowing and voluntary.

B.

Donald also argues that the district court incorrectly calculated his sentence by erroneously finding that one of his prior convictions was a felony. Whether a prior conviction is a felony for purposes of the career offender sentencing guidelines or a § 841 enhancement is a question of law this Court reviews de novo. United States v. Abu Ali, 528 F.3d 210 (4th Cir. 2008).

Under the federal sentencing guidelines, a defendant is a "career offender" if, inter alia, he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). The term "controlled substance offense" is later defined as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year . . . ." Id. § 4B1.2(b). Similarly, if the Government seeks a sentencing enhancement under § 841(b)(1)(C), then if it proves the defendant was convicted of "a prior conviction for a felony drug offense," the statutory maximum is thirty years'

imprisonment. 21 U.S.C. § 841(b)(1)(C). A "felony drug offense" likewise requires that the offense carry a maximum term that exceeds one year of imprisonment. Carachuri-Rosendo v. Holder, 130 S. Ct. 2577, 2581-83 (2010).

Donald first argues that one of the convictions the PSR relied on in finding that he was a career offender was not a felony. On October 12, 1998, Donald pled guilty to possession with intent to sell and deliver cocaine in Wayne County Superior Court in North Carolina. J.A. 1192. He received a 6 to 8 month sentence. Id. The Government concedes that the 1998 Wayne County conviction can no longer count as a felony for sentencing purposes in light of this Court's decision in United States v. Simmons, 649 F.3d 327 (4th Cir. 2011) (en banc). Nevertheless, the Government urges that this did not affect Donald's guidelines calculation or sentence, and thus he has no basis for relief.

Donald's presentence report added 2 criminal history points as a result of this conviction pursuant to U.S.S.G. § 4A1.1(b). His criminal history points totaled 16, establishing a criminal history category of VI. But the 2 points added to Donald's criminal history as a result of the 1998 conviction would have been added even if the PSR had not classified that offense as a felony: those 2 points were added pursuant to U.S.S.G. § 4A1.1(b). That section states, "Add 2 points for each prior

10

sentence of imprisonment of at least sixty days not counted in (a)." U.S.S.G. § 4A1.1(b). Because Donald was sentenced to 6 to 8 months' imprisonment on that conviction, the same 2 points would have been added and Donald still would have been classified as a category VI offender. With respect to the computation of the offense level, the PSR did apply the career offender enhancement and initially set the offense level to 34. See U.S.S.G. § 4B1.1. However, § 4B1.1 notes that it only applies "[i]f the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable . . . ." Id. § 4B1.1(b). When the PSR calculated the offense level based on the particular facts of the case -- the base offense level, the managerial role enhancement, and the obstruction of justice enhancement -- the offense level came to 43. Thus as the PSR noted, "in that the offense level calculated above is greater than the offense level determined by 4B1.1, 34, the higher offense level is utilized." The PSR therefore correctly calculated the Appellant's guideline sentence.

With respect to the application of § 841's increase to the statutory maximum sentence, Donald makes the same argument, contending that the 1998 Wayne County offense was not a felony conviction. The Government notes that while Donald challenges one of his two felony convictions, he does not contest the other

11

one.  In June 2005 Donald was convicted of the sale or delivery of a Schedule II controlled substance in Greene County Superior Court in North Carolina.  This conviction is punishable by more than a year in prison, and Donald was sentenced to fifteen to eighteen months' custody.  Thus, the enhancement did apply and the statutory maximum was properly calculated.

C.

Donald next challenges the drug weight attributed to him by the district court.  The court attributed 7 kilograms of cocaine base and 2 kilograms of cocaine to him.  Sentencing issues are reviews under an abuse-of-discretion standard, "which translates to review for 'reasonableness.'"  United States v. Mendoza Mendoza, 597 F.3d 212, 216 (4th Cir. 2010).  With respect to drug weight in particular, this Court reviews that question "for clear error."  United States v. Slade, 631 F.3d 185, 188 (4th Cir. 1999).

Donald argues that "[t]he bulk of this weight was testified to solely by law enforcement officers testifying as to what they were told by cooperating witnesses or defendants, all of whom had signed plea agreements."  Br. of Appellant 45.  But this is simply not true:  At trial, several other individuals testified as to Donald's activities in the drug trade.  James Hart, for example, testified that he was addicted to crack cocaine and that he bought "a lot" of it from Donald, one of his regular

12

suppliers, over the course of several years. John Mack Smith testified that he spent his entire weekly paycheck on crack cocaine and that he often purchased from Donald and Donnell. Jason Kelley told the court that he began to sell drugs to Donald in the early 2000s. He sold crack cocaine to Donald once or twice a week in an amount between one and two ounces for several years. These witnesses all corroborate the testimony of the law enforcement officers indicating that Donald was involved in the sale of a large quantity of drugs over a period of several years. Because the Appellant "bears the burden of establishing that the information relied upon by the district court . . . is erroneous," Slade, 631 F.3d at 188, and his assertions purporting to establish the erroneous nature of the testimony are inaccurate, we affirm the district court's finding.

D.

Donald goes on to assert the constitutionality of his sentence, ostensibly claiming that the district court's failure to apply the Fair Sentencing Act ("FSA") violated the Eighth Amendment.[2] This Court reviews issues of law de novo. United States v. Kellam, 568 F.3d 125, 132 (4th Cir. 2009).

---

[2] While the Appellants' brief titles this section "The district court erred in imposing an enhanced sentence . . . constituted cruel and unusual punishment and a violation of due
(Continued)

The FSA increased the quantity of crack cocaine necessary to trigger certain mandatory minimums under 21 U.S.C. § 841(b)(1). Pub. L. No. 111-220, 124 Stat. 2372. The statute was signed into law on August 3, 2010, see id.; Donald, however, was sentenced on July 8, 2010. This Court has already held that the FSA does not apply retroactively. United States v. Bullard, 645 F.3d 237, 248-49 (4th Cir. 2011) ("We agree [with the Government] and join all of our sister circuits to have addressed the issue in holding that the Savings Statute does indeed preclude retroactive application of the FSA."). We therefore reject this claim of error.

E.

Finally, Donnell challenges the district court's application of the managerial enhancement. With respect to the standard of review, Donnell argues that Olano's four-pronged plain error test should apply: "Because trial counsel for defendant Donnell Coppedge interposed no objection to the role enhancement . . . the plain error standard applies." Br. of Appellant 60. To the contrary, Donnell did object to the enhancement; in court, however, he chose to withdraw the

---

process," there is no actual argument that the sentence was unconstitutional. Rather, it argues only that the FSA should retroactively apply to his sentence to avoid "serious constitutional problems." Br. of Appellant 56.

14

objection and stipulated to the applicability of the enhancement. As the Olano Court noted, "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." United States v. Olano, 507 U.S. 725, 733 (1993). Because Donnell affirmatively waived his objection, it is not reviewable on appeal. United States v. Claridy, 601 F.3d 276, 284 n.2 (4th Cir. 2010).

III.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process. For the reasons discussed above, we affirm the district court's decision.

AFFIRMED