**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 12-4873

_____

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

DAVID LEE KIDD, II,

            Defendant - Appellant.

_____

No. 12-4874

_____

UNITED STATES OF AMERICA,

            Plaintiff - Appellee,

      v.

DAVID L. KIDD, II,

            Defendant - Appellant.

_____

Appeals from the United States District Court for the Northern District of West Virginia, at Wheeling.  Frederick P. Stamp, Jr., Senior District Judge.  (5:11-cr-00017-FPS-JES-1; 5:12-cr-00014-FPS-1)

_____

Submitted:  May 30, 2013               Decided:  June 6, 2013

_____

Before GREGORY, SHEDD, and WYNN, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

---

Brendan S. Leary, Assistant Federal Public Defender, Wheeling, West Virginia; Kristen M. Leddy, Research and Writing Specialist, Martinsburg, West Virginia, for Appellant. William J. Ihlenfeld, II, United States Attorney, John C. Parr, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

David Lee Kidd pled guilty to conspiracy to distribute Schedule II controlled substances, 21 U.S.C. § 846 (2006), conspiracy to commit money laundering, 18 U.S.C.A. § 1956(h) (West Supp. 2013), and contempt, 18 U.S.C. § 402 (2006). He was sentenced to a term of 262 months' imprisonment. Kidd appeals his sentence, contending that the district court clearly erred when it found that he possessed a firearm during a drug offense.[*] U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (2011). We affirm.

Kidd was one of the leaders in a conspiracy that obtained oxycodone and other prescription medications from pain clinics in Florida and sold them in West Virginia and eastern Ohio in 2010 and 2011. The conspiracy involved a large number of conspirators who engaged in buying pills, distributing pills, collecting money from distributors, and laundering profits, often at casinos. In March 2011, Kidd and his lieutenant, Chris Grigg, were stopped for speeding near Orlando, Florida, and were found to be in possession of over 6000 oxycodone pills, 294 Xanax pills, and over $13,500 in cash. Search warrants were subsequently executed at properties occupied by Kidd in Martins

---

[*] Although the cases are consolidated for appeal, Kidd raises no issue with respect to his contempt conviction.

3

Ferry, Ohio, and Grigg in Bridgeport, Ohio. From a safe in Grigg's residence, law enforcement officers seized 279 oxycodone pills, about $3000 in cash, and six firearms. From a safe in Kidd's residence, they seized 1551 oxycodone pills, over $43,000 in cash, and a loaded Harrington and Richardson .32 caliber revolver, as well as ledgers showing money owed to him by co-conspirators and two CDs of MRIs used by conspirators to doctor-shop in Florida. In August 2011, Kidd was released on bond. He absconded and was apprehended almost two weeks later in Oklahoma, which resulted in a separate charge of contempt.

Kidd objected in the district court to the two-level increase recommended in the presentence report for possession of a firearm during the offense. He asserted that he obtained the gun from a friend for target practice and put it in the safe after it jammed. At the sentencing hearing, Drug Enforcement Agent Robert Manchas testified for the government about the investigation, Kidd's arrest, and finding the gun in Kidd's safe. Defense counsel argued that, because the safe was a large one and the contents had fallen off the shelves when it was moved, it was unclear whether the gun was in close proximity to the drugs and cash within the safe before the safe was moved. Counsel argued that the loaded gun might have been in the safe without having any relation to the evidence of drug trafficking also kept in the safe.

The district court found that the dangerous weapon enhancement was applicable. The court found that the safe was not comparable to a large closet and that the gun was kept in close proximity to drugs, cash, MRIs used in the conspiracy, and ledgers showing amounts of money owed to Kidd for drugs fronted to others. The court determined that it was not clearly improbable that the gun was connected to the offense, and was instead probable or likely that the gun was connected to the offense.

Sentences are reviewed for procedural and substantive reasonableness under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, 51 (2007). Miscalculation of the Guidelines range is a significant procedural error. Id. A two-level increase is authorized under USSG § 2D1.1(b)(1) if "a dangerous weapon (including a firearm) was possessed" during the commission of the offense of conviction, "unless it is clearly improbable that the weapon was connected to the offense." United States v. Slade, 631 F.3d 185, 188 (4th Cir. 2011) (quoting USSG § 2D1.1 cmt. n.3). "[P]ossession of the weapon during the commission of the offense is all that is needed to invoke the enhancement." United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997). The defendant has the burden of showing that a connection between his possession of a firearm and his drug offense is "clearly improbable." Slade, 631 F.3d at 189.

5

We conclude that the district court's factual finding that Kidd possessed a dangerous weapon during the offense, which we review for clear error, United States v. McAllister, 272 F.3d 228, 234 (4th Cir. 2001), is not clearly erroneous. Kidd's argument to the contrary is not persuasive. United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010). The district court did not clearly err in finding that the government met its burden of proof and that Kidd failed to establish that his possession of a firearm during his drug trafficking was clearly improbable.

We therefore affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED