**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4309

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARCUS DEON LONGUS,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Martinsburg. Thomas S. Kleeh, Chief District Judge. (3:21-cr-00033-TSK-RWT-13)

Submitted: December 3, 2025                    Decided: May 15, 2026

Before RUSHING and BENJAMIN, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:** Douglas Sughrue, Pittsburgh, Pennsylvania, for Appellant. William Ihlenfeld, United States Attorney, Lara K. Omps-Botteicher, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Martinsburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Marcus Deon Longus pleaded guilty to a drug-distribution conspiracy charge involving cocaine, cocaine base, and heroin mixed with fentanyl, and was sentenced to 168 months' imprisonment followed by a three-year term of supervised release. Longus appeals, raising various challenges to his sentence. Finding no reversible error, we affirm.

I.

In July 2021, Longus was one of 34 defendants named in a 30-count indictment focused on a drug-distribution conspiracy operating in Berkely County, West Virginia. Longus was named in four counts—conspiracy to possess with intent to distribute cocaine, crack cocaine, and a heroin-fentanyl mixture, *see* 21 U.S.C. §§ 841(a), 846; and three related counts of using a communication device to commit a drug-distribution felony, *see* 21 U.S.C. § 843(b). After the issuance of a superseding indictment in 2022, Longus pleaded guilty to the conspiracy charge.

According to the presentence report, Longus's offense involved at least 3.5 (but less than 5) kilograms of cocaine, which yielded a base offense level of 28. The PSR added two levels to reflect Longus's role in the offense, for a total recommended offense level of 30. Because Longus had smuggled contraband into the jail while he was awaiting sentencing, the PSR did not include an offense-level reduction for accepting responsibility. With a total offense level of 30 and Longus's Category IV criminal history, the PSR concluded that Longus's advisory sentencing range was 135-168 months. Longus objected to the calculations and recommendations of the PSR and sought a downward departure from the Guidelines sentencing range.

2

At the sentencing hearing, the government presented testimony from Sergeant Jonathan Bowman, a member of the task force that spearheaded the investigation into the drug-trafficking organization. Bowman testified about various intercepted phone calls where Longus set up and discussed drug transactions with suppliers and customers, and he described several supply runs to New York undertaken by Longus and a cooperating co-defendant, who also testified at the sentencing hearing. Bowman also testified about the surveillance conducted as a result of the information learned through the intercepted calls. In addition, the government presented the testimony of Corporal Jeremy Jenkins, who described the scheme Longus carried out to smuggle synthetic THC (referred to as "K2" or "spice") into the West Virginia jail where he was housed pending sentencing.[1]

After considering the testimony and the parties' submissions, the district court rejected Longus's objections and adopted the findings and calculations of the PSR. The court denied Longus's request for a downward departure and instead imposed a high-end Guidelines sentence of 168 months' imprisonment. Longus appeals, challenging the district court's drug-quantity finding, application of the role-in-the-offense enhancement, and failure to award an acceptance-of-responsibility reduction.

II.

A.

---

[1] Longus's family members took paperwork explaining the First Step Act, saturated it with liquid K2, and then gave it to Longus's attorney to be mailed along with legal materials to Longus at the jail.

3

We turn first to the district court's drug-quantity determination, which we review for clear error. *See United States v. Williamson*, 953 F.3d 264, 272 (4th Cir. 2020). As noted, the district court found Longus responsible for at least 3.5 kilograms of cocaine, which led to a base offense level of 28. Longus concedes that 3059.5 grams of cocaine was properly attributed to him, *see* Brief of Appellant at 22, but he argues that the record is insufficient to push the total over 3500 grams. Longus thus contends that the base offense level should be 26 rather than 28.

"[T]he government bears the burden of proving by a preponderance of the evidence that quantity of drugs for which a defendant should be held accountable at sentencing." *United States v. Milam*, 443 F.3d 382, 386 (4th Cir. 2006). "Under the [Sentencing] Guidelines, where there is no drug seizure . . . , the court shall approximate the quantity of the controlled substance." *Williamson*, 953 F.3d at 273 (cleaned up). A sentencing court has "considerable leeway" in estimating the quantity of drugs attributable to a defendant, and "may give weight to any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *Id.* (cleaned up).

In our view, the record is more than sufficient to support the district court's estimation of the drug quantity attributable to Longus. As testified to by Sergeant Bowman, the government intercepted phone calls in December 2020 between Longus and Juan de la Rosa Tejeda, one of Longus's suppliers. In those calls, Longus talked about his last purchase of 500 grams of cocaine and complained that the price he had paid ($52 per gram) was too high for him to make a profit, and he set up another purchase of cocaine. *See* J.A.

4

319 (Longus asking, "You got the same thing from last time?"). Initially, Longus intended the second purchase to be the same amount as the first, *see* J.A. 323 ("I need the one like [I] got last time. . . ."), but in a later call, Longus advised de la Rosa Tejeda that he didn't have enough money and wanted to buy 250 grams instead, *see* J.A. 325 ("Basically it was supposed to be $26480 right, but I don't have all the money. So just make it . . . the 250 of the one thing for the 52 . . . ."). The 250-gram purchase is included in the 3059.5 grams of cocaine that Longus concedes was properly attributed to him, but he argues that, as to the 500-gram purchase, Bowman's testimony did not establish that it involved cocaine. *See* Brief of Appellant at 25.

Contrary to Longus's argument, Bowman explicitly testified that "the original purchase was a half kilogram of cocaine," J.A. 138, and his testimony indicated that the investigators were able to conclude that the conversation was about cocaine in part because of the price Longus was complaining about, *see* J.A. 137. Although the conversations used the coded and indirect language frequently employed by drug dealers, Longus has identified nothing that would make it improper for the district court to accept Bowman's testimony. *See United States v. Slade*, 631 F.3d 185, 188 (4th Cir. 2011) (explaining that a defendant challenging the district court's drug-weight calculation "bears the burden of establishing that the information relied upon by the district court . . . is erroneous."). Moreover, the transcripts of the intercepted calls make it clear that the 250-gram purchase involved the same controlled substance as the 500-gram purchase, and Longus, as noted, does not contest the inclusion of the 250-gram purchase in the cocaine total.

Given the 3059.5 grams of cocaine that Longus concedes was properly attributed to him, the 500-gram purchase from de la Rosa Tejeda is, in and of itself, enough to support the district court's factual determination that Longus's offense involved at least 3.5 kilograms of cocaine. Because the district court's drug-quantity finding is supported by the record, we reject Longus's challenge to the base offense level calculated by the district court.

B.

We turn now to the role-in-the-offense enhancement. The Guidelines call for a 4-level enhancement if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," U.S.S.G. § 3B1.1(a); a 3-level enhancement if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive," *id.* § 3B1.1(b); and a two-level enhancement if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in subsection (a) or (b)," *id.* § 3B1.1(c). When determining whether a role-in-the-offense enhancement is warranted, the district court should consider:

> [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

6

*United States v. Kellam*, 568 F.3d 125, 148 (4th Cir. 2009) (citing U.S.S.G. § 3B1.1, cmt. n.4). "The court's ruling regarding a role adjustment is a factual determination reviewed for clear error." *Id.* at 147-48.

The district court concluded that Longus qualified for the 2-level enhancement under section 3B1.1(c) based on Longus's interactions with the cooperating codefendant (CCD). CCD began buying drugs for his personal use from Longus in 2020. In March 2021, Longus recruited CCD to make a supply run with him to New York. Longus and CCD drove to New York in separate vehicles, and Longus told CCD where to stop and what to do at each stop. Longus was CCD's only point of contact—he had no contact information for anyone at any of the stops in New York. Packages were placed and removed from CCD's car at the various stops, but he did not know what was inside the packages. Longus paid CCD a relatively small amount for the trip--$100 and a few grams of cocaine. After that first successful trip, CCD made several more trips to New York at Longus's request. In each case, the *modus operandi* was the same—Longus planned the trips, drove in a separate car, provided CCD with only the information necessary for him to complete the stops, and paid him a small amount. Based on these facts, the district court concluded that CCD "took direction and instruction" from Longus, J.A. 194, and that Longus therefore supervised CCD within the meaning of section 3B1.1(c).

In arguing that the enhancement was improper, Longus contends the facts of his case are largely indistinguishable from the facts of *United States v. Slade*, a case where we reversed the application of a 3-level manager-or-supervisor enhancement under section 3B1.1(b). We disagree.

7

In *Slade*, the defendant was a "mid- to upper-level member of the drug conspiracy who sold or delivered cocaine and cocaine base both to his own clientele and to other members of the conspiracy, who, in turn, sold the drugs to their clientele." 631 F.3d at 190 (cleaned up). Some members of the conspiracy "also sold cocaine and cocaine base 'for' Slade on various occasions," and "an unindicted co-conspirator drove Slade to various locations to deliver cocaine base to his clients." *Id.* We reversed the application of the enhancement because,

> [a]lthough Slade supplied large quantities of drugs to some co-conspirators who, in turn, sold those drugs to their clientele, there is simply no evidence that Slade exercised any supervisory responsibility over these persons by controlling them or directing the terms of their sales. Additionally, while an unindicted co-conspirator did drive Slade to various locations to deliver cocaine base to his own clientele, *there is no indication from the record that the co-conspirator did so pursuant to or as a result of any exercise of managerial or supervisory authority by Slade*.

*Id.* at 191 (emphasis added). Unlike the silent record in *Slade*, the evidence of the New York supply runs outlined above is sufficient to support the district court's factual determination that CCD acted at Longus's direction and supervision during those trips. Because the enhancement is supported by evidence in the record, the district court did not clearly err, and we reject Longus's challenge to the 2-level enhancement under U.S.S.G. § 3B1.1(c).

## C.

Finally, we consider Longus's claim that he was entitled to an acceptance-of-responsibility adjustment to his total offense level.

8

The Guidelines provide that a defendant is eligible for a two-level reduction to his offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). "To earn the reduction, a defendant must prove to the court by a preponderance of the evidence that he has clearly recognized and affirmatively accepted personal responsibility for his criminal conduct." *United States v. Bolton*, 858 F.3d 905, 914 (4th Cir. 2017) (cleaned up). When considering whether a defendant has earned the reduction, "the sentencing judge must weigh the totality of the circumstances." *United States v. Harris*, 890 F.3d 480, 488 (4th Cir. 2018). The Guidelines commentary provides a nonexclusive list of factors to consider, including "any truthful admission of the conduct comprising the offense, voluntary termination of criminal conduct, voluntary payment of restitution, voluntary surrender to authorities, cooperation with authorities, post-offense rehabilitation, and the timeliness of acceptance of responsibility." *Id.* (citing U.S.S.G. § 3E1.1, cmt. n.1).

In this case, the district court declined to apply the adjustment because Longus continued to engage in criminal conduct even after he pleaded guilty, by conspiring to smuggle K2 into the jail. The court explained,

> With respect to the question of acceptance of responsibility, this is post-plea misconduct, which is, you know, that period of time where a defendant who's pled guilty has an opportunity to demonstrate to the Court, one, acceptance; and two, to posture him- or herself as best possible for sentencing.
>
> Mr. Longus elected to take a different path, which here was engaging in the same conduct included in the indictment in this case and to which he pled guilty. He has not withdrawn from criminal activity. He continued in it on recorded jail lines and in, in all candor, surprising detail set out the criminal enterprise. And considering the post-plea aspect of this, the specific

9

nature of it, and frankly the overwhelming evidence of it, the Court is really left with no conclusion but to concur with probation's recommendation and overrule the objection with respect to acceptance of responsibility.

Mr. Longus did plead guilty, which is usually, in most ordinary circumstances, the first step towards receiving credit for acceptance of responsibility under the guidelines. But after that he again chose a different path, and I don't believe affording him acceptance under the guidelines would be appropriate at this point. So . . . the objection on that issue [is] overruled.

J.A. 183-84.

Longus argues on appeal that he is entitled because he pleaded guilty without a plea agreement and never contested his guilt on the indicted charges. As to the K2 scheme, Longus contends that possession of K2 is legal outside of prison and that it is "inappropriate to deny application of an acceptance-of-responsibility adjustment for a conspiracy to smuggle an item into prison which does not appear illegal to possess when not in prison." Brief of Appellant at 35.

As the government notes, Longus is incorrect about the legal status of K2 outside prison walls. *See, e.g., Anderson v. Diamondback Inv. Grp., LLC*, 117 F.4th 165, 184 (4th Cir. 2024) (explaining that "both naturally occurring and synthetic THC" are currently classified as Schedule I controlled substances). Because Longus conspired to smuggle a controlled substance into the jail while he was awaiting sentence, it was well within the district court's discretion to conclude that Longus had not accepted responsibility and was not entitled to an adjustment to his offense level under U.S.S.G. § 3E1.1.[2] *See Harris*, 890

---

[2] Moreover, even if K2 were legal to possess outside the prison context, that would not undermine the district court's decision. There are many items that are legal to possess outside of prison but constitute illegal contraband inside prison.

10

F.3d at 488 (explaining that the district court's decision on the acceptance-of-responsibility question "is entitled to great deference and is reviewed for clear error") (cleaned up).

## III.

Accordingly, for the foregoing reasons, we reject Longus's challenges and affirm the 168-month sentence imposed by the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before us and argument would not aid our decision-making process.

*AFFIRMED*