**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 18–4566**

─────────────

UNITED STATES OF AMERICA,

                Plaintiff – Appellee,

     v.

TWYLAIN WILSON, a/k/a 5-Alive,

                Defendant – Appellant.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, District Judge. (3:17–cr–00134–FDW–DSC–80)

─────────────

Submitted: September 11, 2020                Decided: October 14, 2020

─────────────

Before GREGORY, Chief Judge, KEENAN, and FLOYD, Circuit Judges.

─────────────

Affirmed in part, reversed in part, and remanded for resentencing by unpublished opinion. Chief Judge Gregory wrote the opinion, in which Judge Keenan and Judge Floyd joined.

─────────────

Rudolph A. Ashton, III, DUNN, PITTMAN, SKINNER & CUSHMAN, New Bern, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Chief Judge:

On March 8, 2018, Appellant Twylain Wilson pleaded guilty to various offenses relating to his participation in a drug trafficking enterprise. On appeal, he challenges the district court's calculation of his sentence. We affirm in part, reverse in part, and remand for resentencing.

**I.**

On May 16, 2017, the Government indicted 83 individuals, including Wilson, for criminal offenses related to drug and gang activity. J.A. 108. On March 8, 2018, Wilson pleaded guilty to RICO conspiracy, in violation of 18 U.S.C. § 1962(d); possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(D); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924. J.A. 608–12, 914.

As part of his plea, Wilson agreed to a factual basis describing his membership in the United Blood Nation ("UBN") gang and his participation in the underlying offenses. J.A. 548–52, 612. Wilson was a member of a UBN chapter known as the Nine Trey Gangsters. J.A. 551. This chapter operates according to the following hierarchy, from highest to lowest: Godfather; High; Low; 5-Star General; 4-Star General; 3-Star General; 2-Star General; 1-Star General; General Member ("Soldier" or "Scrap"). J.A. 549. Wilson held the rank of "Low" in his chapter. J.A. 551. During his membership in UBN, Wilson participated in UBN gang meetings, including a meeting he conducted with co-defendant Kenneth Marquise Ruff over the phone on November 25, 2016. *Id.* During the meeting,

2

Ruff advised Wilson that he would create "another team" for Wilson and informed him of changes in the gang's membership, as well as the status of membership dues paid by subordinates. *Id.* Wilson then instructed Ruff to intimidate a member of the gang because the member might cooperate with law enforcement against Wilson. Specifically,

> WILSON instructed RUFF to tell a subordinate member to "tighten the fuck up" because they suspected that the member was considering cooperating with law enforcement against WILSON. WILSON instructed RUFF to "dp" that member, or assault the member, if he did not show loyalty to WILSON and RUFF and to have that member show RUFF that member's court paperwork. WILSON told RUFF to tell the member that if that member gave a statement to the police, that he is a "fucking dub."

*Id.*

Outside of these meetings, Wilson also "participated in racketeering acts in furtherance of the UBN enterprise, including drug trafficking." *Id.* On January 22, 2014, he exchanged Facebook messages with a subordinate UBN member about the subordinate's plan to sell controlled substances to generate money to pay the subordinate's UBN dues. *Id.* A month later, police searched Wilson's home and found him in possession of controlled substances with intent to distribute. *Id.* On August 11, 2016, Wilson exchanged Facebook messages with another subordinate UBN member about another UBN member being placed "on the plate."[1] *Id.*

On May 17, 2018, the district court's probation office issued a presentence investigation report ("PSR") with recommendations for the applicable Sentencing Guidelines for Wilson. J.A. 1257. The probation officer calculated Wilson's total offense

---

[1] According to the grand jury indictment, putting someone "on the plate" is a term for targeting an individual for a physical attack. J.A. 396.

level to be 21 after including a two-level increase for obstruction of justice under § 3C1.1 and a three-level increase for his role as a manager or supervisor in the offense under § 3B1.1(b). J.A. 1275. The probation officer also assigned Wilson 13 criminal history points,[2] placing him in criminal history category VI. J.A. 1279. With an offense level of 21 and a criminal history category VI, Wilson faced a Sentencing Guidelines range of 77 to 96 months in prison for the conspiracy and drug trafficking convictions underlying this appeal, as well as a mandatory and consecutive sixty-month sentence for his firearms offense. J.A. 1284–85.

On June 6, 2018, Wilson's counsel filed objections to the PSR. J.A. 1253. First, he objected to the probation officer's recommendation of an upward adjustment for

---

[2] Section 4A1.1 of the Sentencing Guidelines explains how the criminal history category is calculated. It instructs courts to:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
>
> (d) Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
>
> (e) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.

U.S.S.G. § 4A1.1.

4

obstruction of justice, arguing that there was insufficient evidence to support it. *Id.* Second, Wilson's counsel objected to the probation officer adding two criminal history points for Wilson's 2014 conviction for possession of marijuana with intent to manufacture, sell, or deliver, in addition to the three criminal history points he received for a conviction on the same day for being a felon in possession of a gun. *Id.* Counsel argued that the sentences Wilson received for his 2014 narcotics and gun possession convictions "should be considered a single prior sentence because the sentences were both imposed on May 11, 2015." *Id.* Finally, Wilson's counsel challenged a line in the PSR characterizing certain activity as gang activity and offered corrections for several minor factual details.[3] *Id.*

On June 26, 2018, Wilson's counsel filed a motion for a downward departure or variance from the Sentencing Guidelines range calculated in the PSR. J.A. 802. In the motion, he stated that he was "in agreement with the PSR's guideline calculations except for the criminal history computation." J.A. 806.

The district court held a sentencing hearing four days later. J.A. 311, 863. During the hearing, Wilson's counsel objected again to the court's criminal history computation. J.A. 868–79. Citing § 4A1.2(a)(2) of the Sentencing Guidelines, he asserted that Wilson's 2014 convictions for possession of marijuana and felon in possession of a firearm should be treated as a "single sentence," since they were "imposed on the same day" with "no

---

[3] For example, Wilson stated that his partner's age should be stated as "25 years old, not 26," and that the description of the alleged offense should be characterized as involving four ounces of marijuana, rather than five. J.A. 1254.

5

intervening arrest." J.A. 869. Defense counsel explained, "the acts occurred on the same day. There's no intervening arrest, and he was sentenced on the same day, as is shown in the PSR." *Id.* The Government initially agreed with the objection but looked to the probation officer for guidance.[4] J.A. 874–75. The probation officer responded, "Based on the *Davis* case,[5] if [the two sentences] are consecutive to the other, we can count them separate." J.A. 875. The probation officer further stated that Wilson's sentence for the 2014 narcotics conviction was suspended and ordered to run consecutive to his firearms sentence, but because Wilson violated parole after completion of his firearms sentence, his violation of probation counted as "new conduct" that merited criminal history points under § 4A1.2(k). J.A. 876. The court credited the probation officer's analysis and overruled the objection. J.A. 878–79. After adopting the Guidelines range as calculated in Wilson's PSR, the district court determined that neither a departure nor a variance from the Guidelines range was warranted. J.A. 895, 902–03, 905. The court sentenced Wilson to 82 months in prison for the conspiracy and drug trafficking offenses, and a consecutive 60 months in prison for the firearms offense, for a total sentence of 142 months, or more than 11 years. J.A. 879, 906, 915. On August 8, 2018, Wilson timely appealed. J.A. 316, 921–22.

---

[4] When the court asked for the Government's response, the Government stated: "I looked at the judgments. They were on the same day. They arose out of the same incident. . . . So by reading that, maybe I tend to agree with defense counsel, but maybe probation can help me out as well, how we treat these separately." J.A. 874–75.

[5] The parole officer appears to be citing *United States v. Davis*, 720 F.3d 215 (4th Cir. 2013), the only Fourth Circuit case captioned *Davis* that addresses § 4A1.2(a)(2) of the Sentencing Guidelines.

6

## II.

"Under the Sentencing Reform Act of 1984, the United States Sentencing Commission establishes Sentencing Guidelines based on the seriousness of a defendant's offense and his criminal history." *Hughes v. United States*, 138 S. Ct. 1765, 1772 (2018). While a court has "discretion to depart from the Guidelines," the Guidelines "are not only the starting point for most federal sentencing proceedings but also the lodestar." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342, 1346 (2016). "In the usual case, then, the systematic function of the selected Guidelines range will affect the sentence." *Id.* at 1346.

We review a criminal sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007). In doing so, we determine whether the district court committed a significant procedural error, such as improperly calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, or failing to adequately explain its chosen sentence. *See United States v. Pena*, 952 F.3d 503, 512 (4th Cir. 2020). "In assessing whether a district court properly calculated the Guidelines range, including its application of any sentencing enhancements, this Court reviews the district court's legal conclusions de novo and its factual findings for clear error." *Id.* (quoting *United States v. Horton*, 693 F.3d 463, 474 (4th Cir. 2012)). If the court committed a procedural error in sentencing, the error is subject to harmless error review. *See Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012). Under harmless error review, the Government must prove

7

that the error did not affect a defendant's substantial rights. *See United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006).

We review unpreserved sentencing errors for plain error. *See United States v. Olano*, 507 U.S. 725, 731 (1993); *United States v. Lynn*, 592 F.3d 572, 577 (4th Cir. 2010); Fed. R. Crim. P. 52(b). To establish plain error, the appealing party must show that an error (1) was made, (2) is plain (i.e., clear or obvious), and (3) affects substantial rights. *United States v. Massenburg*, 564 F.3d 337, 342–43 (4th Cir. 2009). This Court will find clear error only if it is "left with the definite and firm conviction that a mistake has been committed." *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014) (internal quotation marks omitted). In addition to this three-part showing, an appellate court may exercise its discretion to correct the error only if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018) (internal quotation marks omitted).

## A.

Generally, a court determines the appropriate Sentencing Guidelines range by calculating a defendant's offense level and criminal history score. *See* U.S.S.G. § 1B1.1. When calculating a defendant's criminal history score, a court should "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month" and "[a]dd 2 points for each prior sentence of imprisonment of at least sixty days." U.S.S.G. § 4A1.1. The record shows that Wilson was arrested on February 20, 2014 for possession of marijuana with intent to sell, deliver, or manufacture, and that he was also charged for felon in possession of a firearm the next day. J.A. 1276–78. Wilson received a sentence of 14–

8

26 months of imprisonment for his firearm conviction and a sentence of 6–17 months of imprisonment for his narcotics conviction, suspended to run at the expiration of his sentence for the firearm conviction. *Id.* Consequently, the sentencing court assigned Wilson three criminal history points for his sentence for being a felon in possession of a firearm and two points for his sentence for possession of marijuana with intent to distribute. *Id.*; *see also* J.A. 878–79.

However, Wilson contends that the district court erred by separately tallying Wilson's 2014 marijuana and firearms offenses when calculating his criminal history. When a defendant has multiple sentences for prior convictions, the Guidelines instruct a district court to "determine whether those sentences are counted separately or treated as a single sentence." U.S.S.G. § 4A1.2(a)(2). "Prior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest." *Id.* But if there is no intervening arrest, the sentences are treated as a single sentence if: "(A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." *Id.* In Wilson's case, his prior sentences—for the 2014 offenses—were imposed on the same day for offenses that occurred on the same day with no intervening arrest.[6] J.A. 869–70, 874–75, 1277–78.

---

[6] Although the PSR lists February 21, 2014 as the date of arrest for the firearm offense, and February 20, 2014, as the date of arrest for the marijuana offense, the PSR describes both the marijuana and firearm offenses as occurring on February 20, 2014 after a probation search of Wilson's home on that day uncovered both drugs and a loaded firearm. J.A. 1276–78. During sentencing, Wilson's counsel explained that Wilson "was arrested on February 20th, 2014, and charged" with his marijuana offense, and "[t]he next day, February 21st, he was then charged with possession of firearm by a felon." J.A. 869. (Continued)

9

Under the plain text of the Guidelines, Wilson's 2014 sentences should have been treated as a single sentence, and the district court erred by counting them separately.

The Government contends that the district court properly added two criminal history points for Wilson's marijuana sentence. *See* Appellee Br. at 52–55. Although the marijuana conviction resulted in a suspended sentence, the Government argues that a prison term was reinstated when Wilson violated the terms of probation for that sentence. *Id.* But the Government's argument is irrelevant to the issue on appeal.[7] The question is not whether the narcotics sentence, standing alone, merits two criminal history points. It is whether the narcotics sentence ought to stand alone at all.

During sentencing, the court and its probation officer also offered several theories for treating the 2014 narcotics as a separate sentence. None are persuasive.

First, the court's probation officer cited *United States v. Davis*, 720 F.3d 215 (4th Cir. 2013) to assert that concurrent sentences must be treated as separate sentences under the Guidelines. J.A. 875 ("Based on the *Davis* case, if they are consecutive to the other, we can count them separate."). But the fact that Wilson's 2014 sentences ran consecutively is inconsequential. The Sentencing Guidelines expressly contemplate the possibility that consecutive sentences may be treated as a single sentence. Section 4A1.2(a)(2) explains,

---

The Government agreed, stating, "I looked at the judgments. They were on the same day. They arose out of the same incident. So my little background is, but the background nonetheless, if there is no intervening arrest, the Government would concede there is no intervening arrest." J.A. 874.

[7] The Government appears to misread Wilson's position as arguing that the 2014 narcotics conviction should not have earned criminal history points because Wilson received a suspended sentence. *See* Appellee Br. at 52–55. That is not Wilson's argument.

"if prior sentences are treated as a single sentence, use the longest sentence of imprisonment if concurrent sentences were imposed. If consecutive sentences were imposed, use the aggregate sentence of imprisonment." U.S.S.G. § 4A1.2(a)(2). *Davis* does not conflict with the Guidelines. There, we held that "where a defendant receives a 'consolidated sentence' (or 'consolidated judgment') under North Carolina law, it is one sentence." 720 F.3d at 219. *Davis* does not state at any point that consecutive sentences must be treated as separate sentences when calculating a defendant's criminal history.

Second, the probation officer suggested that Wilson's probation violation counted as "new conduct" that required him to separately "receive[] criminal history points under 4A1.2(k)." J.A. 876. Similarly, the district court stated that the criminal history points for Wilson's 2014 narcotics offense were added because of Wilson's violation of probation for that offense, and that the probation violation, or its added term of imprisonment, was "not really the same day" as the firearms sentence. J.A. 879. Both theories run against the plain language of the Guidelines. Even if a probation violation results in a new term of imprisonment, the Guidelines do not treat that new term as a separate sentence imposed on a different day. Rather:

> In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable.

U.S.S.G. § 4A1.2(k)(1). In other words, the Guidelines require the court to treat any sentence imposed for violation of probation cumulatively, not separately, from the sentence

11

for the underlying conviction.[8]  Because the sentence Wilson received for the conviction underlying the probation violation—Wilson's 2014 marijuana offense—should have been treated as the same sentence imposed for Wilson's 2014 firearms offense, U.S.S.G. § 4A1.2(a)(2), the court should have added any additional term of imprisonment for the parole violation to the overall term of imprisonment for both the marijuana and firearm offenses.  U.S.S.G. § 4A1.2(k)(1).  But Wilson's sentence for the firearm offense already earned the maximum criminal history points assignable for a single sentence.  U.S.S.G. § 4A1.1.  Thus, the additional term of imprisonment for Wilson's probation violation should not have added any more points to Wilson's overall criminal history score.  Accordingly, the court erred by treating Wilson's narcotics sentence as a separate sentence when calculating his criminal history score.

The district court's error was not harmless.[9]  By calculating the two offenses separately, the court added two criminal history points for Wilson's 2014 narcotics offense,

---

[8] Though Guidelines application note 11 begins by saying that § 4A1.2(k) applies "where the original term of imprisonment imposed, if any, did not exceed one year and one month," it continues to say that "[i]f the sentence originally imposed, the sentence imposed upon revocation, or the total of both sentences exceeded one year and one month, the maximum three points would be assigned." *Id.*  In other words, note 11 states that the rule applies where the underlying sentence is shorter than a year and month only because an underlying sentence exceeding a year and month will have already earned the maximum criminal history points for a single sentence.  The note does allow a court to treat the parole violation as a separate sentence if "another sentence was imposed for a new criminal conviction."  But the record here shows no new criminal conviction or sentence imposed for Wilson's probation violation.  *See* J.A. 1277–78.

[9] The Government did not argue for harmless error in its brief on appeal.  *See* Appellee Br. at 50–58.  Since the Government has the burden to argue harmless error, *United States v. Robinson*, 460 F.3d 550, 557 (4th Cir. 2006), the district court's error alone is sufficient to vacate the sentence and remand for resentencing.

in addition to the three points it assessed for Wilson's 2014 firearms offense, producing a total score of 13. This placed Wilson's criminal history in category VI, with a sentencing range of 77 to 96 months in prison. U.S.S.G. Ch. 5, pt. A. Absent the error, Wilson would have received only three points for both 2014 offenses, U.S.S.G. § 4A1.1, producing a total score of 11. This would place Wilson in criminal history category V, with a sentencing range of 70 to 87 months in prison. U.S.S.G. Ch. 5, pt. A. "When a defendant is sentenced under an incorrect Guidelines range—whether or not the defendant's ultimate sentence falls within the correct range—the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez*, 136 S. Ct. at 1345.

## B.

Wilson also contends that the court improperly applied an upward adjustment for an aggravating role in the offense. We agree.

The Guidelines instruct a court to enhance a defendant's offense by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," or by three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive . . . ." U.S.S.G. § 3B1.1(a)–(b). To determine a defendant's leadership and organizational role, a court should consider the following factors:

> [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of

13

participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. 4; *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002). The Government has the burden to prove by a preponderance of the evidence that this sentencing enhancement should apply. *United States v. Steffen*, 741 F.3d 411, 414 (4th Cir. 2013).

The district court applied a three-level enhancement to Wilson's sentence based on his managerial or supervisory role in the offense. U.S.S.G. § 3B1.1(b). Wilson argues that the enhancement is inappropriate because "[t]he instant case involved a large drug conspiracy with 83 defendants," and that Wilson's conduct was relatively minor, compared to numerous other co-defendants charged with murder, attempted murder, assault, and robbery. Appellant Br. at 30–31. Wilson also argues that Wilson's conduct has not "satisfied the seven factors required in *United States v. Sayles*." *Id.* at 30. The Government claims that the court did not plainly err by applying the role in the offense enhancement because of Wilson's rank, his participation in gang meetings, his role keeping track of subordinate's membership dues, and his instruction to one subordinate to assault another if the individual did not demonstrate loyalty to Wilson. Appellee Br. at 57–58.

The record here does not justify an aggravating role in the offense enhancement. "In cases where this Court has affirmed the application of an aggravating role adjustment under USSG § 3B1.1(b), there existed on the record evidence that the defendant actively exercised some authority over other participants in the operation or actively managed its activities." *United States v. Slade*, 631 F.3d 185, 190 (4th Cir. 2011). This adjustment is

14

warranted only where the Government demonstrates that the defendant "was an organizer, leader, manager or supervisor of *people*," *Sayles*, 296 F.3d at 226 (emphasis in original), and only where a defendant wields the "*actual* exercise of control" over those people. *United States v. Cameron*, 573 F.3d 179, 185 (4th Cir. 2009) (emphasis in original). Thus, in *United States v. Slade*, we held "[a]lthough Slade supplied large quantities of drugs to some co-conspirators, who, in turn, sold those drugs to their clientele, there is simply no evidence that Slade exercised any supervisory responsibility over these persons by controlling them or directing the terms of their sales." 631 F.3d at 191.

Here, as in *Slade*, there is no evidence proving Wilson's actual control over other people. The Government begins by identifying Wilson's rank in the UBN. But the key issue here is whether Wilson controlled people—not what people called him. A person's title alone cannot justify a sentencing enhancement. *See* U.S.S.G. § 3B1.1 cmt. 4 ("In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling.").

Next, the Government points to Wilson's participation in "gang meetings." Appellee Br. 57. Yet the record only describes his participation in a single meeting over the phone on November 25, 2016. J.A. 551. And the content of the November meeting reflects very little about Wilson's role in the UBN. During the meeting, co-defendant Ruff advised Wilson that Ruff intended to create "another team" of "scraps" (soldiers) for Wilson. *Id.* No further context is given for this team or Wilson's role in it. Wilson and Ruff also discussed "the collection of UBN gang dues from UBN subordinates." *Id.* But the fact that Wilson discussed the collection of dues does not tell us whether he wielded

15

authority in that process. In that same meeting, Ruff informs Wilson about a subordinate Ruff put "on freeze" (probation) from the UBN—reflecting Ruff's authority to discipline subordinates—but we do not see any similar statements by or about Wilson disciplining subordinates for failing to pay dues. *See United States v. Llamas*, 599 F.3d 381, 390 (4th Cir. 2010) (finding evidence to support adjustment for aggravating role in the offense because "Llamas enforced the Center's rules, and even punished employees who failed to abide thereby.").

The only instruction given by Wilson during the November meeting is when Wilson told Ruff to threaten a UBN member "considering cooperating with law enforcement against WILSON." *Id.* Wilson "instructed RUFF to . . . assault the member, if he did not show loyalty to Wilson," and to have that member show Ruff his court paperwork. *Id.* However, this single request is not enough to prove Wilson's management role in UBN's activities. *Cf. United States v. Bartley*, 230 F.3d 667, 674 (4th Cir. 2000) (affirming aggravating role enhancement with respect to money laundering conspiracy because defendant "repeatedly directed others to wire transfer proceeds"). Without further detail about the request or the relationship between Wilson and Ruff, the Government cannot establish that Wilson made this request as a leader commanding a subordinate—as opposed to doing so as a person requesting a fellow gang member's aid. *See Slade*, 631 F.3d at 191 ("[W]hile an unindicted co-conspirator did drive Slade to various locations to deliver cocaine base to his own clientele, there is no indication from the record that the co-conspirator did so pursuant to or as a result of any exercise of managerial or supervisory authority by Slade.")

16

The record also references two sets of Facebook messages Wilson sent to other members of the UBN related to the gang's activities. But the descriptions of these messages are vague and do not offer enough evidence to consider these messages commands, let alone commands that were obeyed. On January 22, 2014, Wilson wrote to a subordinate UBN member that owed UBN gang dues, to which the member replied that he intended to sell drugs to generate money to pay the dues. *Id.* The record does not tell us if Wilson issued a command. In fact, it suggests that the subordinate made his or her own choice to sell drugs to generate money for payment, with no indication that Wilson controlled how the subordinate would sell drugs. *See Slade*, 631 F.3d at 191 (reversing adjustment for aggravating role where there was "no evidence that Slade exercised any supervisory responsibility over [co-conspirators] by controlling them or directing the terms of their [drug] sales"). On August 11, 2016, Wilson wrote Facebook messages to another UBN member "about another UBN member being placed 'on the plate'" (targeted for assault). *Id.* But again, the fact that Wilson wrote messages "about" another member being targeted does not show whether Wilson was ordering an assault, whether the two were discussing someone else's order, or whether the two were discussing the fact that a fellow member had been targeted by another gang, organization, or individual.

Finally, Wilson was found in possession of controlled substances with intent to distribute. *Id.* "But being a buyer [or] seller of illegal drugs, even in league with . . . five or more other persons, does not establish that a defendant has functioned as a[ ] . . . manager or supervisor of criminal activity." *Sayles*, 296 F.3d at 225 (internal quotation marks

17

omitted). If anything, his direct participation in selling drugs would make it less likely that he was a manager or supervisor.

In sum, the record shows only that Wilson participated in the UBN—it does not demonstrate whether he exercised actual control over other members. Without that evidence, the district court plainly erred by enhancing his offense level under § 3B1.1(b).[10]

## C.

Wilson also challenges the court's application of an upward adjustment for obstructing or impeding the administration of justice. Under U.S.S.G. § 3C1.1, a court may enhance a defendant's sentence if:

> (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense . . . .

*Id.* Section 3C1.1 covers conduct including "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 cmt. 4(a). The Government must prove the facts

---

[10] This error affected Wilson's substantial rights and the integrity of the proceedings by affecting the sentence imposed. *See Rosales-Mireles*, 138 S. Ct. 1897, 1906 ("The risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error . . . ."); *Slade*, 631 F.3d at 191. Without the enhancement, Wilson would have had a total offense level of 18. *See* J.A. 1275; U.S.S.G. § 4A1.1. This means that Wilson—with a criminal history category V—would have received a sentencing range of 51 to 63 months in prison, as opposed to the 77 to 96 months in prison he did receive. *See* J.A. 1284–85; U.S.S.G. Ch. 5, pt. A.

constituting obstruction by a preponderance of the evidence. *United States v. Kiulin*, 360 F.3d 456, 460 (4th Cir. 2004).

As a preliminary matter, Wilson waived his challenge to the court's adjustment for obstruction of justice. "A party who identifies an issue, and then explicitly withdraws it, has waived the issue." *United States v. Robinson*, 744 F.3d 293, 298 (4th Cir. 2014) (quoting *United States v. Rodriguez*, 311 F.3d 435, 437 (1st Cir. 2002)). The Government argues that Wilson waived his challenge to the enhancement for obstruction of justice because Wilson filed an objection to the enhancement before the district court but said in a later motion that he was "in agreement with the PSR's guideline calculations except for the criminal history computation." Appellee Br. at 56; *see also* J.A. 806, 1253. Wilson concedes on appeal that he waived the argument before the district court and that the claim is not reviewable on appeal. Appellant Reply Br. at 13.

Waiver aside, the record provides evidence to support an adjustment for obstruction of justice. When pleading guilty, Wilson admitted to the following facts:

> WILSON instructed RUFF to tell a subordinate member to "tighten the fuck up" because they suspected that the member was considering cooperating with law enforcement against WILSON. WILSON instructed RUFF to "dp" that member, or assault the member, if he did not show loyalty to WILSON and RUFF and to have that member show RUFF that member's court paperwork. WILSON told RUFF to tell the member that if that member gave a statement to the police, that he is a "fucking dub."

J.A. 551. Though Wilson made these statements in 2016, prior to his indictment in 2017, § 3C1.1's application notes state that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or

19

prosecution of the offense of conviction." U.S.S.G. § 3C1.1 cmt. 1. To be clear, although § 3C1.1 may apply to conduct prior to investigation or prosecution, it does so only in the limited circumstances where the obstructive conduct was purposefully calculated to thwart prosecution of the specific "offense of conviction." It does not apply where the conduct aimed to obstruct prosecution for a different offense or for the defendant's generalized wrongdoing. But the offenses of conviction here include RICO conspiracy for Wilson's participation in the UBN's overall enterprise. Thus, his efforts to intimidate a subordinate gang member were purposefully calculated to thwart prosecution of Wilson's offense of conviction. Threats to assault a subordinate if he gave a statement to the police are likely to achieve that end. Therefore, the court did not commit plain error by applying a sentencing adjustment for obstruction of justice.[11]

## III.

For the reasons stated above, we affirm the district court in part, reverse in part, vacate Wilson's sentence, and remand for resentencing consistent with this opinion.

*AFFIRMED IN PART, REVERSED IN PART, AND*
*REMANDED FOR RESENTENCING*

---

[11] Wilson also contends that the court erred by applying adjustments for both obstruction of justice and Wilson's aggravating role in the offense because the adjustments were applied for the same conduct. Appellant Br. at 6; Appellant Reply Br. at 14–15. Because we hold that the court erred in applying an enhancement for Wilson's aggravating role in the offense, we need not address this claim.

20